312 N.W.2d 921 (1981)
In the Matter of the Involuntary Dissolution of VILLA MARIA, INC.
James SHEEHAN, et al., Petitioners, Respondents,
v.
John J. MONDATI, Appellant.
No. 51773.
Supreme Court of Minnesota.
December 4, 1981.
Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog, W. Scott Herzog and Edward J. Blomme, Minneapolis, for appellant.
O'Connor & Hannan, Joe A. Walters and Robert A. Brunig, Minneapolis, for respondents.
Considered and decided by the court en banc without oral argument.
OTIS, Justice.
Appellant, John Mondati, is a 50% shareholder and president of Villa Maria, Inc., a Minnesota corporation. He appeals from an order granting involuntary dissolution of the company or in the alternative a buy-out of James Sheehan's 50% interest at market value. We affirm.
The power of the courts to grant an involuntary dissolution of a corporation is governed by Minn.Stat. § 301.49 (1980), which states in part:

*922 A corporation may be dissolved by involuntary proceedings in the discretion of the court when it is made to appear:
* * * * * *
(3) that the directors or those in control of the corporation have been guilty of fraud or mismanagement, or of abuse of authority, or of persistent unfairness toward minority shareholders; or
(4) that there is internal dissension and that two or more factions of the shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders; * * *.
While the trial court did not state the grounds upon which it based its order, it concluded that Mondati had breached his fiduciary obligation as an officer and director of the corporation. We believe it is fair to say, looking at the whole course of conduct presented in the record, that Mondati's conduct is tantamount to an abuse of authority and sufficient grounds exist to dissolve Villa Maria, Inc.
Villa Maria was incorporated in February 1966 for the purpose of building and operating a nursing home. Mondati contributed the land on which the home was to be built and respondents agreed to arrange financing for its construction and operation. A written agreement to that effect was entered into by the parties; this agreement also contained provisions giving one party the option of buying the other's stock at book value in the event he wished to sell out. The entire one thousand shares of authorized stock (par value of $100 per share) were issued equally to John Mondati and James Sheehan. Mondati has served as president since the incorporation. James and John Sheehan are elected directors on the board, as is Mondati and his attorney, Herman Ratelle.
James arranged construction and permanent financing in the amount of $650,000 through Midwest Federal Savings & Loan. He and his brother personally guaranteed that loan as well as additional loans and credit lines to purchase beds, office equipment, furnishings, and to provide needed operating capital. Mondati arranged for Uptown Pharmacy, a corporation of which he was sole owner and shareholder, to provide drugs and merchandise on credit and provided for loans in smaller amounts from friends and relatives.
Trouble developed when the Sheehans became dissatisfied with the lack of return on their investment. Mondati refused to issue dividends but instead sought unsuccessfully to buy Sheehan's shares at double the book value. Since that time Mondati has taken control of the company, running it without regard to the interests of the Sheehans. Actions have been taken without consent of the directors and no annual meetings of the directors or shareholders have been held since 1973. When the Sheehans asked for a special meeting Mondati refused to attend. Although they used their credit to obtain considerable amounts of financing for the corporation, the Sheehans have received no return on their investment. In fact they have never seen a financial statement of the corporation and Mondati has refused to consider possible ways to finance dividends because he feels the company is financially unready to issue them.
Respondents brought suit to remove Mondati as president and to dissolve the corporation when they discovered he had arranged to have a company Mondati owned, Uptown Pharmacy, purchase land adjacent to the nursing home which Uptown then leased to Villa Maria for use as a parking lot. Despite the fact that Villa Maria had previously attempted to purchase the land the Sheehans were not made aware that it was available.
The law is clear that "one entrusted with the active management of a corporation, such as an officer or director, occupies a fiduciary relationship to the corporation and may not exploit his position as an "insider" by appropriating to himself a business opportunity properly belonging to the corporation." Miller v. Miller, 301 Minn. 207, 219, 222 N.W.2d 71, 78 (1974). By purchasing the land and then arranging for the terms of the lease between two *923 companies in which he had an interest, Mondati breached his fiduciary obligation. The record shows this action was symptomatic of his general attitude toward the nursing home. His failure to consult the Sheehans when making decisions or to hold annual meetings (or attend when special meetings were called) precluded them from taking any part in the corporation. Mondati received offers to purchase the nursing home which he never communicated to the Sheehans. Contrary to the trial court's conclusion, we believe that, as owner of 50% of the stock, Sheehan had a significant interest in being informed of such opportunities. Mondati's lack of hesitation about doing business with his own company, Uptown Pharmacy, is further evidence of his attitude that the nursing home was his own corporation and the Sheehan's interest in it negligible.
We cannot escape the conclusion that Mondati used his position as president to run Villa Maria as he pleased and that in doing so he acted unfairly toward the Sheehans. The Sheehans personally guaranteed the loans which made it possible to build Villa Maria. They have seen no return on an investment they made in 1965 and have never received financial statements indicating the corporation's status. There have been no meetings, no consultations, and Mondati has refused to consider issuing dividends. The district court has the equitable power to adjudge the dissolution of a domestic corporation where there is prejudicial mismanagement by those in control, In re Hedberg-Freidheim & Co., 233 Minn. 534, 47 N.W.2d 424 (1951); Green v. Nat'l Advertising & Amusement Co., 137 Minn. 65, 162 N.W. 1056 (1917); and the facts amply support such a finding. We need not decide at this time whether the corporation could also be dissolved for persistent unfairness toward minority shareholders or deadlock such that the business could no longer be conducted with advantage to the shareholders.[1]
The second issue raised is whether the trial court erred in ordering that the buy-out provision be at market value rather than book value. We recognize that agreements such as this one, which give an option to other shareholders to purchase stock being sold at book value, are prevalent in small corporations and some may be concerned that dissatisfied minority shareholders will sue to dissolve the corporation to avoid the effect of the buy-out provision. The statute sets forth the grounds for dissolution, however, and the facts are more than sufficient here to justify the involuntary dissolution. The only choice given to the reluctant shareholder in a dissolution proceeding is to accept a portion of the liquidation assets. The trial court gave appellant greater rights than those given by statute by allowing Mondati the option of buying out James Sheehan's interest in the corporation. We believe that it was not a derogation of the pre-incorporation agreement to order such a remedy; the court was fully justified in ordering dissolution and therefore appellant's rights were no longer governed by contract but were limited to the liquidation assets available under the statute. This rule applies only where there are solid grounds for dissolution. Mondati's high-handed manner in running Villa Maria as though it were his own business and his failure to consider the interests of the other shareholder justifies Sheehan's avoiding the agreement.[2]
Affirmed.
NOTES
[1] We note that, although Villa Maria, Inc. is not subject to the provisions of the Minnesota Business Corporation Act of 1981, director deadlock is specifically added as a ground for dissolution and need not be accompanied by a situation where the corporation is not earning a profit. Minn.Stat. § 302A.751 (1981 Supp.).
[2] We note that appellant will be entitled to an offset for unpaid accrued salary.