**J BAR H, INC., a Wyoming Corporation, and Donald K. Harger and Irene F. Harger, Derivatively on Behalf of J Bar H, a Wyoming Corporation, Appellant (Plaintiff),**

v.

**Joanna JOHNSON, Appellee (Defendant).**

**No. 90–253.**

Supreme Court of Wyoming.

Dec. 19, 1991.

Bret F. King of King & King, Jackson, and Kenneth M. McLaughlin, argued, Student Intern, for appellant.

Juline Christofferson, argued, Jackson, for appellee.

Before URBIGKIT, C.J., CARDINE and MACY, JJ., and SPANGLER and TAYLOR, District Judges.

CARDINE, Justice.

This case presents a textbook example of oppression and deadlock in a small, closely-held corporation. The trial court ordered the corporation dissolved and a receiver appointed. It found that money loaned to the corporation by appellants was not a valid debt of the corporation. It also refused to order relief in the corporation's derivative action against appellee for starting a competing business.

We affirm the trial court's order. Since some of the issues in this case have not yet been determined by the trial court, we consider only the issues presented for review and remand for further proceedings.

Appellants phrase the issues on appeal as follows:

"I. Whether the trial court erred in granting appellee's motion to amend the pleadings to conform to the evidence?

"II. Whether the trial court erred in finding that certain money loaned to the corporation by appellants Donald and Irene Harger is not a valid debt of the corporation?

"III. Whether the trial court erred in failing to grant appellants' motion for summary judgment?

"IV. Whether the trial court erred in failing to award damages to the appellants?"

Appellee states similar issues:

"I. Whether the trial court abused its discretion in granting appellee's motion to amend the pleadings to conform to the evidence?

"II. Whether the trial court erred in finding that an unauthorized and unratified promissory note signed by Donald K. Harger in behalf of the corporation, to himself and Irene Frances Harger, is not a valid debt of the corporation.

"III. Whether the trial court erred in failing to grant appellants' motion for summary judgment.

"IV. Whether the trial court erred in finding that a fiduciary duty was owed to the corporation by appellee, and failing to award damages to the appellants."

Appellee Joanna Johnson created J Bar M, a game processing business, in 1976. J Bar M was formed as a sole proprietorship. Later, Johnson sold J Bar M to appellant Donald Harger and a partner. It went bankrupt. Donald Harger then persuaded Johnson to associate in the formation of J Bar H to purchase J Bar M's assets at the foreclosure sale.

Appellants Donald K. Harger and Irene F. Harger formed J Bar H on November 18, 1983. The articles of incorporation made the Hargers its sole directors. At the organizational meeting, the corporation sold and transferred to the Hargers all 2,000 of its authorized shares of stock.

At the first meeting of shareholders, the Hargers' initial stock certificate was canceled and Joanna Johnson and the Hargers were each issued half (1,000 shares) of J Bar H. The articles of incorporation were not amended, however. The Hargers and Ms. Johnson executed a shareholders' agreement which made Donald Harger president and treasurer of J Bar H and Joanna Johnson its vice president and secretary. The corporate bylaws provided that the president of the corporation would be its chief executive officer.

The shareholders' agreement allowed Harger and Johnson to hold their offices until the shareholders unanimously agreed to their successors. In the agreement, Mr. and Mrs. Harger were again named directors of the corporation, and Ms. Johnson was added as a third director. Ms. Johnson was also given the right to name a fourth director who would serve so long as she was a shareholder.

The shareholders' agreement also apportioned managerial duties between Mr. Harger and Ms. Johnson. The two had very different backgrounds and experience. Mr. Harger had a master's degree in business administration and had been involved in

management of several multi-million dollar corporations. Ms. Johnson had experience in game processing but had never previously served on a corporate board. The agreement provided that Harger and Johnson were to co-manage the corporation during its first two years of operation. Each would receive a salary for doing so. It set forth with some specificity the managerial duties of each party. After the end of the two-year period, each party was free to continue employment with the corporation but was not obligated to do so. The agreement also contained a restriction on transfer of shares and a clause providing for arbitration in the event of deadlock.

For the first two years, Don Harger and Joanna Johnson co-managed the business as provided in the shareholders' agreement. However, J Bar H had financial troubles from the very beginning. It is clear from the record on appeal that these troubles contributed to the conflict which soon arose between Johnson and the Hargers.

Between 1984 and 1988, J Bar H held no formal directors' or shareholders' meetings, nor were any consent minutes signed and filed. By the end of the 1986 game season, Donald Harger began to squeeze Johnson out of management. He exercised increasing, unilateral control of the day-to-day business of J Bar H. In the face of multiplied managerial conflicts, Harger sent Johnson a letter in June 1987 in which he informed her that she was no longer an employee of J Bar H and as a shareholder she had no active role or operational responsibilities within the corporation. Mr. Harger claimed he had the authority to make this decision inherent in his position as president and chief executive officer of J Bar H.

In Spring or early Summer of 1987, Harger changed the locks on the business and instructed employees not to allow Johnson to enter the business. Harger stated at trial that he locked Johnson out because Johnson was writing checks and giving herself distributions from the corporation at a time when it was facing foreclosure. The locks to the business were changed two

more times, first by Johnson and then by Harger.

At the beginning of the Fall, 1987 game season, when Ms. Johnson arrived to begin work with her usual crew of meatcutters, Harger's new manager barred them from entry. A confrontation ensued, and after Mr. Harger arrived, he called the police. Subsequently, on September 17, 1987, Harger applied for a temporary restraining order to prevent Johnson from interfering with the business. Johnson then filed suit against Harger in district court. This suit was dismissed in December 1987, and the parties were ordered to undergo binding arbitration pursuant to the terms of the shareholders' agreement.

The Board of Arbitrators of Teton County found that Don Harger should manage the day-to-day affairs of the corporation. The Board recommended that "the corporation be liquidated or the parties work together to turn the corporation around to make it profitable, under Mr. Harger's management."

Mr. Harger apparently took the Board's decision as a mandate to shut Ms. Johnson completely out of the management of the corporation. He instructed Johnson that she was to have no further involvement whatsoever in the operation of the company. Without consulting Ms. Johnson, he designated Ronald Woodward "vice president" of the corporation. Harger removed Johnson's name from the corporation's bank signature card and substituted that of Woodward, as "Vice President and Asst. General Manager" of J Bar H.

On May 25, 1988, the Hargers executed a corporate resolution allowing the corporation to borrow money from themselves. The Hargers did not tell Ms. Johnson about this resolution. Don Harger then borrowed $290,000.00 on his personal assets and loaned the corporation $247,402.07. He executed, as president of J Bar H, a promissory note to the himself and Irene Harger from the corporation in that amount plus twelve percent interest.

In May 1988, Donald Harger listed J Bar H for sale with Real Estate of Jackson Hole. The listing contract showed Mr.

Harger as the owner of record of the corporation. Mr. Harger also wrote a letter to Douglas Herrick, the president of Real Estate of Jackson Hole, in which Harger stated: "The Company is now available for sale as a result [of] a favorable Arbitration Hearing assigning control to me."

Ms. Johnson, frustrated at her lack of control over J Bar H, set up another meat processing business under the name "Game Processing." She sent a letter soliciting business from many of the outfitters who were or had been customers of J Bar H. The corporation filed suit for damages and injunctive relief against Joanna Johnson and Wendell Campbell, one of her game processors, on September 20, 1989. Wendell Campbell was later dismissed from the suit. The Hargers later amended the complaint to allege a shareholder's derivative suit by themselves on behalf of the corporation against Joanna Johnson.

While the suit was pending, the directors of J Bar H held an annual board of directors meeting on June 4, 1990. The minutes of this meeting reveal that the corporation was deadlocked on nearly every issue of importance. The Hargers voted one way, and Joanna and her designated director, the opposite.

Trial was held on the Hargers' complaint on July 16–18, 1990. At the conclusion of both parties' cases in chief, Johnson moved to amend the pleadings to conform to the evidence. The trial court granted the motion to amend the pleadings, over appellants' objection. The Hargers then called two rebuttal witnesses. Johnson also took the stand for herself as a rebuttal witness. At the close of all the evidence, the trial court gave the parties thirty days in which one or the other could buy the other party out. The parties reached no settlement during this thirty-day period.

On September 11, 1990, the trial court announced its decision. It found that Johnson's actions in operating a competing business were a breach of her fiduciary duty to J Bar H. However, the court found this breach was caused by the Hargers having locked Johnson out of the business and therefore the court refused to award any

damages to the Hargers or the corporation. The trial court further ordered that the Hargers' derivative suit be dismissed and that Johnson be granted the prayer of her complaint, i.e., that the corporation be dissolved. The court appointed a receiver to wind up the affairs of the corporation. The Hargers have appealed from this order.

Although in its order, the trial court found that the Harger's loan to the corporation was not a valid debt of J Bar H, it did not enter any order providing that the Hargers' debt not be recognized. A hearing on this issue was scheduled for December 20, 1990, in the trial court, well after this appeal was filed. The record does not disclose whether the hearing was held. Counsel at oral argument indicated that no hearing had been held because the trial court had decided it no longer had jurisdiction because of the appeal pending in this court. Therefore, we do not have a final order on all issues before us because, *inter alia*, the issue of the recognition of the Hargers' debt has not been resolved below.

█ Normally, a litigant may not appeal to this court from an order which is not final as to all issues unless the trial court makes a determination that there is no just cause for delay. W.R.C.P. 54(b). However, we have in the past, on occasion, considered cases as upon a writ of certiorari, where judicial economy and justice required or where there had been procedural default by counsel. *Bland v. State*, 803 P.2d 856 (Wyo.1990) was such a case in which the appeal was dismissed for untimely filing but the case was reinstated on a writ of certiorari. In this case, it seems clear that the trial court intended a final order but mistakenly failed to make the order final as to one, and possibly more, of the issues. Judicial economy and speedy resolution of disputes would best be served by our considering this appeal at this time. Accordingly, we will treat this case as appropriate for certiorari and consider the justiciable issues presented for review. *See In re General Adjudication of All Rights to Use Water in Big Horn River*

*System,* 803 P.2d 61, 67 (Wyo.1990); W.R.A.P. 13.01.

### Amendment of Pleadings to Conform to the Evidence

■ Appellants' first issue is whether the trial court erred in granting Johnson's motion to amend the pleadings to conform to the evidence. The trial court granted Johnson's motion, at the close of the evidence, as to six new issues. Appellants now claim unfair prejudice from this amendment.

Wyoming Rules of Civil Procedure 15(b), which governs amendment of the pleadings to conform to the evidence presented, states as follows:

"(b) *Amendments to conform to the evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such amendment."

Appellants argue that the trial court was bound by its pretrial order which set forth the issues to be tried and which therefore superseded the issues raised in the pleadings. Appellants rely on W.R.C.P. 16, which states in pertinent part:

"[The pretrial] order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

*See also Salveson v. Cubin,* 791 P.2d 581, 582 (Wyo.1990); *Clouser v. Spaniol Ford, Inc.,* 522 P.2d 1360, 1364 (Wyo.1974) (pretrial order supersedes pleadings and controls subsequent course of action in a civil case).

We do not agree that Rule 16 controls the amendment issue in this case. A pretrial order is not set in stone but may be amended within the trial court's discretion to avoid manifest injustice. W.R.C.P. 16. Furthermore, we agree that in some circumstances the policy of liberal amendment under Rule 15 should moderate the "manifest injustice" standard of Rule 16. *Wallin v. Fuller,* 476 F.2d 1204, 1209 (5th Cir.1973). Therefore, we apply a Rule 15(b) standard to the trial court's actions, rather than Rule 16's stricter standard, to assess the trial court's exercise of its discretion.

■ Under Rule 15(b), where there is consent to try an issue, the decision to allow amendment of the pleadings lies within the scope of the court's sound discretion. Our review of the trial court's exercise of discretion is guided by whether or not the objecting party was prejudiced by allowance of the amendment. *Hernandez v. Gilveli,* 626 P.2d 74, 77 (Wyo.1981); *Elder v. Jones,* 608 P.2d 654, 657 (Wyo. 1980), citing *Rose v. Rose,* 576 P.2d 458, 459 (Wyo.1978).

Consent to trial of an issue may be either express or implied. It is relatively simple to determine whether a party has given express consent to the trial of an issue. In this case, for example, the parties expressly consented to trial of the issues raised in the pleadings, as modified by the pretrial order.

The pretrial order shows the issues litigated by express consent were the following:

(1) Hargers listed the issues as whether Johnson owed a fiduciary duty to J Bar H and whether she was liable to plaintiffs for damages for her breach of fiduciary duty.

(2) Johnson listed three issues: (a) whether Johnson's fiduciary duty ceased to exist once Harger shut her out of corporate management; (b) whether J Bar H, as a close corporation, could maintain a suit against Johnson without sanction of the board of directors; and (c) whether the parties in interest were *de facto* partners and whether that partnership terminated when the corporation became deadlocked.

The existence of implied consent is a more complex issue, however. Wright, Miller and Kane discuss this issue in their treatise on the Federal Rules of Evidence:

> "Implied consent [under Fed.R.Civ.P. 15(b)], however, is much more difficult to establish and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. If they do not, there is no consent and the amendment cannot be allowed.
>
> "A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Thus, consent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend actually produced evidence bearing on the new issue." 6A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil 2d* § 1493 at 19–20 (1990) (footnotes omitted).

██ We consider first the amendment which allowed the trial court to consider whether the Hargers' loan was a valid debt of the corporation. By the explicit terms of the pretrial issues, the corporation's indebtedness is not mentioned. Therefore, there was no express consent to trial of this issue. We must next search for evidence of implied consent.

In Johnson's pretrial summary, which was incorporated into the pretrial order, she stated the following:

> "It is apparent, that the situation giving rise to Plaintiff's causes of action are matters which are deadlocked and which require arbitration.

> "It is Defendant Johnson's intention to immediately file a request with the court that the [sic] all issues herein involving the conduct of the corporation[']s affairs be submitted to arbitration so that a final resolution of this problem can be achieved.

> *"The number of issues disputed by the parties in interest * * * far exceed the issues presently before the Court.* Resolution of these few issues will only prolong the unsettled and unresolvable partnership of these parties. Therefore, it is imperative that the remedy for settling differences, as agreed to in the Shareholders Agreement, be immediately pursued." (emphasis added)

Arbitration was not pursued and, as discussed previously, the case went to trial. Donald Harger, when asked on direct examination at the very beginning of the trial why he had brought the lawsuit, broached the issue of corporate debt when he answered as follows:

> "Joanna Johnson is an officer of the corporation, vice president and secretary, she is a director, and has continued to act as such. She's a 50 percent shareholder, and stands to gain or lose by the success of the corporation whether she knows it or not. *We both own 50 percent of something that has a considerable amount of debt.* She has competed against the corporation and taken funds away that would have remained with the corporation and I'm specifically talking about the game processing business, none of the other aspects.

> "On the other hand, I've worked since November of '83, no shareholder distributions. JoAnna has received $16,379 in shareholder distributions. *My wife and I have lent the company on numerous, dozens of occasions, working capital. * * * At this point or the end of last year the company owed us $11,505. Since that time my wife and I have borrowed personally to put another fifteen thousand into the corporation to keep it alive."* (emphasis added)

Appellee objected to this testimony as unresponsive to the question posed. The court

allowed Harger to complete his explanation.

Johnson later introduced the Note itself without objection. Brec Cooke, a director of J Bar H, read into the record the following statement from the minutes of a J Bar H board of directors' meeting:

" 'Brec made a motion that the Board request all money paid to the Hargers on personal loans by the corporation be returned to the corporation and that no further amounts be paid on any personal loans of Don's or Fran Harger's by J Bar H, Inc.' "

Cooke then described how Donald Harger ruled this motion out of order.

Donald Harger was called as an adverse witness for Johnson. During his testimony, he admitted that he had made the loan secured by the Note and that it was neither authorized by the board of directors nor by Joanna Johnson.

After the motion to amend was granted, Harger did not ask for a continuance. Instead, he took the stand as a rebuttal witness and testified that he had called Joanna to ask for her cooperation in borrowing money on behalf of the corporation, and that when she refused her cooperation he had consulted his attorney about executing the authorization to borrow.

These circumstances show implied consent of the parties to try the indebtedness issue. Johnson's pretrial memorandum stated that there were issues to be resolved in addition to those before the court. At trial, Johnson presented considerable testimony concerning the indebtedness incurred by the Hargers, including testimony of Mr. Harger himself. Harger put the corporate debt at issue with his answer to the very first question posed by his counsel. All of these factors show that the issue of the corporate indebtedness assumed by the Hargers was actually litigated at trial with their implied consent.

■ Hargers argue, nevertheless, that they did not object to some of Johnson's evidence because they did not know it would be used against them on the indebtedness issue. Given the evidence in this case, however, and the way in which it was presented by the parties, we think that there was indication that the loan issue was being litigated as a separate issue.

Appellants also argue that had they known that indebtedness was at issue, they could have prepared to meet the issue with evidence of their own. Specifically, appellants state that they "could and would have introduced evidence regarding the underlying debt which that loan was intended to replace, the circumstances in which that underlying debt was assumed, and the extent to which the Appellee had known of, consented to, or ratified that underlying debt." Appellants do not state whether information as to these claims was available to them at trial or has been acquired since then. In either case, after Johnson made her motion to amend, Donald Harger did not ask for a continuance, but instead took the stand himself and presented rebuttal testimony. Any prejudice in presenting their case thus comes from appellants' failure to request a continuance.

■ We now consider the remainder of the amended issues. One of these was whether the corporation should be dissolved. At oral argument before us, the Hargers conceded that the trial court acted properly in dissolving the corporation. We will treat this admission as evidence of implied consent to trial of the dissolution issue. *See Purofied Down Products Corp. v. Travelers Fire Ins. Co.*, 278 F.2d 439, 444 (2nd Cir.1960); W.R.C.P. 15(b). The trial court's amendment of the pleadings to include a request for dissolution is therefore affirmed.

■ Johnson also requested that the action be treated as a shareholder action by herself to enjoin the corporation from bringing this suit. Although it amended the pleadings to consider this issue, the trial court did not grant the injunctive relief Johnson requested. Instead, it ruled that no damages were due the corporation because Johnson was deprived of her earnings from the corporation by the Hargers' misconduct. Since no injunctive relief was awarded, the question of whether the com-

plaint was properly amended to request injunctive relief is moot.

■ The issue of removal of the directors is also moot, since the corporation has been ordered dissolved and placed in receivership. As to costs, the propriety of amending the complaint to include them is not ripe for review at this time, because the court has entered no order relating to costs. It is still possible for the court to hold an evidentiary hearing at which both appellants and appellee may present further evidence and argument bearing on the costs issue. Appellants will have sufficient time to prepare to meet these issues, and therefore, will not be unfairly prejudiced by the amendment of the pleadings to add issues relating to costs. *See Haught v. Maceluch*, 681 F.2d 291, 306 (5th Cir.1982) (no prejudice where party has ample opportunity to prepare to meet unpleaded issue).

Under all the circumstances presented, we hold that the pleadings were properly amended to include a request that indebtedness incurred by the Hargers during the shut-out be disregarded. The remainder of the amended issues are either moot or have not yet been decided by the trial court.

■ The trial court has made a finding that the $247,000 loan was not a valid debt of the corporation. It has further instructed the receiver not to pay the Hargers' debts as secured or priority debt. However, no final order has been entered stating that the debt will not be recognized. On remand the trial court should conduct further proceedings and issue an appropriate order on this question in accordance with this opinion.

### Validity of Corporate Debt

Appellants raise three challenges to the trial court's finding that the $247,000 Harger loan was not a valid debt of the corporation. First, they argue that "the validity of the Note and its underlying obligation were so far outside the scope of the pleadings that it was error for the court to reach that question." Second, they argue that it was error for the trial court to resolve the issue without conducting a hearing. Third, they argue that the trial court's finding is not supported by the evidence. We will consider each of these arguments in turn.

Appellants' first argument is identical to that disposed of in our discussion of their first issue. This issue having been resolved by our previous discussion, we move on.

■ Appellants' second argument concerns their due process right to a hearing prior to a determination on the loan recognition issue. We have stated that due process requires that a party called upon to answer a complaint be furnished notice of the allegations against him and a meaningful opportunity to be heard on the issues. *Goss v. Goss*, 780 P.2d 306, 310 (Wyo.1989). We will allow these fundamental due process rights to be infringed only to the extent permitted by legislative or judicially promulgated procedural rules. *Id.* In this case, the requirement of notice and a hearing has been satisfied by the litigation which was had on this issue at trial and by the trial court's compliance with the requirements of W.R.C.P. 15(b). Accordingly, we find no denial of due process.

■ Appellants next claim that the trial court's finding that the Harger loan was not a valid debt of the corporation is unsupported by the evidence. When reviewing a challenge to the evidence supporting the decision of a trial court, we accept the evidence of the prevailing party as true, leaving out entirely the consideration of evidence in conflict with it and giving every favorable inference which may fairly and reasonably be drawn from the prevailing party's evidence. *Scaling v. Scaling*, 805 P.2d 866, 869 (Wyo.1991).

Appellants claim that because they had no opportunity to present evidence, there was insufficient evidence before the court to render its decision. We have already discussed their opportunity or lack thereof in other portions of this opinion. The real question, given our standard of review, is: Could the trial court rule as it did based on the evidence it *did* have before it. We believe that it could, and so affirm the trial court's order.

The trial court had before it Donald Harger's own statement that Joanna Johnson did not authorize the corporation to incur the debt and, further, that the Board of Directors had not authorized the loan. The Note which Donald Harger signed as president of J Bar H was admitted into evidence. Also entered into evidence was a copy of the "Certified Copy of Corporate Resolutions" allowing the corporation to borrow money from the Hargers. This document was signed in the space provided for the secretary of the corporation by Mrs. Harger, when in fact Joanna Johnson was the corporation's secretary.

Wyoming Statute 17–16–801(b) (Dec.1989 Repl.) states that "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the directorship of, its board of directors, subject to any limitation set forth in the articles of incorporation." Applying this law to the facts presented at trial, we affirm the trial court's finding that the loan was not a valid debt of the corporation.

### Denial of Summary Judgment

■ Appellants next contest the trial court's denial of their motion for summary judgment. Denial of summary judgment is not a final, appealable order. *Flying J, Inc. v. Booth*, 773 P.2d 144, 146 (Wyo. 1989); *Thompson v. State ex rel. Wyoming Workers' Comp. Div.*, 768 P.2d 600, 603 (Wyo.1989); W.R.A.P. 1.05. Furthermore, although we consider this appeal as a petition for certiorari because of the lack of a final order, we will not expand the scope of certiorari to consider whether summary judgment was properly denied when the issues have already been tried on their merits. We therefore affirm the trial court's denial of summary judgment for appellants.

### Failure to Award Damages to the Corporation

■ Appellants contend that since the trial court found that Johnson violated her fiduciary duty to the corporation, it abused its discretion by failure to award damages for the breach. The trial court refused to award damages because it held that Mr. Harger caused the breach by shutting Ms. Johnson out of the corporation. Appellants argue that the trial court had to award damages against Johnson to the corporation regardless of any misconduct by Mr. Harger. We disagree.

■ Corporate officers and directors have a fundamental duty of loyalty and fiduciary responsibility to the corporation they manage. *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1296 (Wyo. 1991); *Lynch v. Patterson*, 701 P.2d 1126, 1132 (Wyo.1985). In the small, closely-held corporation, this duty is also reciprocal between the officers/directors of the corporation. The Hargers violated their fiduciary duty to Johnson when they performed a classic "squeeze-out" against Johnson's interests in the corporation. In their treatise on oppression of minority shareholders, O'Neal and Thompson describe some of the harms which a minority shareholder may endure when "squeezed out" of participation in a closely-held corporation:

> "The losses which a minority shareholder suffers in a squeeze-out are sometimes catastrophic. He may be deprived of any effective voice in the making of business decisions. Not only that, he may be locked out of the company's premises; and majority participants may be able to withhold from him information on the affairs of the business and on policies being adopted and decisions being made." 1 F.H. O'Neal & R. Thompson, *O'Neal's Oppression of Minority Shareholders* § 1:03 at p. 4 (2nd ed. 1991) (footnote omitted).

Although in this case, Joanna Johnson could not technically be considered a "minority shareholder," since she held fifty percent of the shares, and although the corporation was not technically a statutory close corporation, since its Articles of Incorporation did not say that it was, Johnson's position as detailed in the shareholders' agreement, the restrictions placed on sale of her shares, and her lack of business acumen relative to that of Don Harger allowed the Hargers to practice just the


sort of oppression described in the treatise. (*See Matter of Villa Maria, Inc.*, 312 N.W.2d 921 (Minn.1981), for a similar pattern of abuse by a fifty percent shareholder/corporation president.)

O'Neal and Thompson go on to say that "Quite commonly when a participant invests in a close corporation he expects to work in the business on a full-time basis. He may put practically everything he owns into the business and expect to support himself from the salary he receives as a key employee of the company. Whenever a shareholder is deprived of employment by the corporation (as he frequently is in these squeeze plays) he may be in effect deprived of his principal means of livelihood." O'Neal and Thompson, § 1:03 at p. 4.

■ The question is whether this "squeeze out" performed against Joanna Johnson had any bearing on her fiduciary duty to the corporation. First, we detail the scope of her fiduciary duty. It has been generally held that in the absence of a contractual provision to the contrary, corporate fiduciaries, including directors and officers, are free to resign and form a competing enterprise. They must not, however, form a competing enterprise while serving as directors. Furthermore, they must not make use of confidential information particular to the corporation's business which they have acquired therefrom. *See e.g. Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky.1991); *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 256, 531 P.2d 428, 432 (1975). This case is subtle, because although Johnson was nominally an officer and director of J Bar H when she began her competing business, she had also been squeezed out of a managerial role. We must therefore analogize to several cases along these lines from other jurisdictions.

In *Tulumello v. W.J. Taylor Int'l Constr. Co., Inc.*, 84 A.D.2d 903, 446 N.Y.S.2d 673 (1981), an employee of a close corporation who was only nominally an officer of the corporation was fired after he announced that he would be purchasing a competing business. The sole stockholder, president, treasurer and director of the corporation, William J. Taylor, Jr., then sued the employee/officer for diversion of corporate opportunity. The New York Supreme Court, Appellate Division, in refusing Taylor's claim for damages and injunctive relief, stated as follows:

*"Public policy strongly militates against sanctions which limit a person's right to earn a livelihood.* Considering that Taylor Co. was a close corporation completely run by Taylor and that Tulumello was only a nominal officer thereof, we find no basis to subject him to the strict fiduciary duty of a responsible officer. There is no evidence of disloyalty by Tulumello. Thus, before the close of his employment, he could properly purchase the rival business incorporated upon termination of employment. There is no evidence that Tulumello solicited customers for such rival business before the end of his employment. Also we find nothing in the nature of his employment establishing a fiduciary relationship which prevented subsequent competition, especially in a business where the Dodge Reports acquaint all of potential customers." *Tulumello*, 446 N.Y.S.2d at 674 (emphasis added and citations omitted).

In *Voss Engineering, Inc. v. Voss Industries, Inc.*, 134 Ill.App.3d 632, 89 Ill.Dec. 711, 481 N.E.2d 63 (1985), a father who owned a majority interest in two small, family-held corporations fired his son, who was a corporate director and was employed by one of the corporations as general manager. After his firing, the son arranged with other employees of the corporation to start a competing business, Voss Industries, Inc. The son did not resign as director of his father's corporations until after his own business was underway. The father filed suit which charged the son with breach of fiduciary duty to the corporations. The Appellate Court of Illinois affirmed the trial court's finding that the son had breached no fiduciary duty to his father's corporations. The Court of Appeals stated as follows:

"James Voss [the son] * * * never returned to his position at Voss Engineering subsequent to his father's pronouncement. Moreover, *he never performed any directorial duties, attended any corporate meetings, or acted for plaintiff corporation in any capacity subsequent to his termination.* His only connected action was to use the company credit cards and car, an action completely justified by his family status alone and enjoyed by other non-employee members of the Voss family.

"James testified that he believed his directorship had been terminated along with his position as manager and officer of plaintiff corporation. We too find that Robert Voss' *termination of his son served not only to fire him from his position as officer and manager but also to effectively remove him from his role as corporate director.* * * *

"Because James Voss was *effectively removed* in September 1980, prior to the time he began operating a competing corporation, he owed *no fiduciary duty to plaintiff."* *Voss,* 481 N.E.2d at 67 (emphasis added).

In *Walter E. Zemitzsch, Inc. v. Harrison,* 712 S.W.2d 418 (Mo.App.1986), the Missouri Court of Appeals refused to hold that the vice-president of a closely-held corporation breached his fiduciary duty when he discussed with the corporation's largest customer the possibility that he would leave the corporation to start a competing business. The customer did not give or promise any business to the vice-president prior to the time he left the corporation. The court further noted that, nominally, as an officer, the vice-president had only limited authority in the corporation.

"He was never furnished with the company's profit statement; he had never been informed of any executive salaries; he was not informed of personnel on the payroll; and he was not authorized to sign the company's checks. Unlike the situation in *Opie Brush [Co. v. Bland,* 409 S.W.2d 752 (Mo.App.1966)], he was not a director or stockholder. * * * [He] was not in possession of any confidential information." *Zemitzsch,* at 422.

None of these cases is directly on point with the facts in the present case. However, we think the principle to be extracted from them is that *the fiduciary duty not to compete depends on the ability to exercise the status which creates it.* It is not stretching this principle too far to hold that where a shareholder/director/employee of a close corporation has been wrongfully terminated from employment with the corporation and has been unjustly prevented from fulfilling her function as a director or officer, she can no longer be considered to act in a fiduciary capacity for the corporation.

Johnson did not begin her competing business until August of 1988, seven months after the Board of Arbitration decision assigned control of the business to Mr. Harger and over a year after he informed her that she was no longer employed at J Bar H and had no active role or operational responsibility for the corporation. Although Johnson had not resigned as director or officer of J Bar H at the time she began her competing business, and although she did assert her authority as a director with regard to meetings and obtaining copies of business records subsequent to the squeeze-out, she was not allowed any meaningful participation in the management of the corporation during this time period and was improperly shut out of corporate employment. Her position as vice-president and secretary of the corporation had been usurped by others.

From an equitable standpoint, we must treat this case as if Johnson had resigned her offices in the corporation when she was shut out of the exercise of them. As a "former" director and officer, Johnson was under no obligation not to compete when she formed her business.

Furthermore, there was not a sufficient showing at trial that Johnson had made use of confidential information that she acquired while a part of J Bar H management. Appellants have claimed that Johnson improperly appropriated the customer list for J Bar H. However, the testimony at trial showed that it was Johnson's expe-

rience and reputation as a game processor which brought in customers to J Bar H in the first place. Many, if not most, of the customers she solicited had known her for many years before J Bar H was ever formed. There was not a sufficient showing that Johnson used any confidential customer list to recruit her customers. We therefore affirm the trial court's decision denying recovery to J Bar H of sums earned by Johnson's competing firm.

■■■ Hargers argue that since it is the corporation which is entitled to recover moneys from Johnson and not the Hargers themselves, their misconduct should not foreclose recovery against Johnson. This argument does not convince us. The corporation was run by the Hargers as virtual sole proprietorship during the time period in question. It cannot now be purged of the taint of the Hargers' mismanagement and unfair practices. It is unfortunate that creditors of the corporation may suffer, but we cannot exonerate the corporation without also unfairly exonerating the Hargers. This we will not do. *Cf. Lynch v. Patterson*, 701 P.2d at 1130–31 (corporate recovery in close corporation would return funds to control of wrongdoers).

### CONCLUSION

■■■ At oral argument, counsel for Joanna Johnson noted that she has filed a second suit against Mr. Harger seeking payment of money allegedly due her out of the sale of J Bar M in the early 1980's. Counsel for Ms. Johnson then requested that we consolidate the remainder of issues to be considered in this action with the action arising out of J Bar M. We decline to do so. Consolidation of actions at the trial court level is a function properly left in first instance to the trial court.

The trial court's order is affirmed and this case is remanded for determination of the remaining issues and for further proceedings consistent with this opinion.

URBIGKIT, Chief Justice, concurring in part and dissenting in part.

I generally concur with the decision and the court's opinion except in one aspect with which I cannot agree. That subject is characterized in the majority as "Validity of Corporate Debt."

My review of the entire record and proper understanding of the proceeding determines that, except for the separately defined dispute about the validity of a promissory note as to legality of execution, the parties here neither tried nor did the trial court decide what amounts in liquidation either litigant may be entitled to be repaid as corporate advances from loans and what amounts will constitute investment as a purchase of equity.

This significant discord is created by our difference of opinion about what the trial court decided in paragraph twenty-five of its Findings of Fact, Conclusions of Law, Judgment and Order Appointing Receiver:

> On or about May 26, 1988, Donald K. Harger executed a Promissory Note, * * * in the principal amount of $247,-402.07 as President of the Corporation, obligating the Corporation to pay the amount of the Promissory Note to Donald K. and Irene Frances Harger of Jackson, Wyoming. The execution of this Note and any other documents in conjunction therewith was not authorized by the Board of Directors of the Corporation and therefore it is not a valid debt of the Corporation and the Corporation is not obligated on said Promissory Note to Donald K. Harger and Irene Frances Harger.

The difference is whether the trial court only invalidated the promissory note or also determined the invalidity of any claimed debt in whatever amount that might have been owed to appellants for loans advanced to the corporation for operational funding.

The litigation pathway of this case was unusual. What we now address is essentially what has been done to date by the trial court and what remains to be determined in the future by additional hearings and a future trial court decision. The strangeness of this adjudicatory pathway is now matched by the confusion we now find at this way station in progression toward an ultimate conclusion.

This lawsuit started with a complaint filed by the "closed corporation" essentially owned by two shareholders, Donald K. Harger and Irene F. Harger (Hargers), appellants, against shareholder Joanna Johnson (Johnson), appellee. The complaint in essence addressed a claim of a fiduciary duty violation by Johnson in engaging in a competitive wild game processing business which was the same business in which this corporation, J Bar H, Inc., was involved. Remedies requested in the complaint included accounting, damages from lost profit and injunction. The answer alleged shareholder/director exclusion by lockout and, by general denial and affirmative allegation, claimed absence of any violation of the claimed fiduciary duty to the corporation in which Johnson was a shareholder and a director. Johnson first filed a motion for summary judgment.

Pursuant to an order for pretrial conference, both litigants filed pretrial memoranda asserting issues presented and their posture relative thereto. The Hargers restated their thesis of the original complaint asserting shareholder/director Johnson's violation of a fiduciary duty. Johnson summarized in her pretrial submission a posture defined in the original answer and she rejected any litigable fiduciary duty violation. The pretrial order granted leave to the Hargers to add a shareholders' derivative action to the complaint since by that time the question had been raised as to whether the proper party should be the corporation under the 50–50 share ownership division or whether a shareholder's derivative action might be appropriate.

The amended complaint adding the shareholders' derivative element was duly filed essentially continuing the same theory of recovery originally presented. The Hargers then followed with their own summary judgment motion. Johnson reciprocated with another motion for summary judgment and the Hargers filed a revised amended complaint which still did not essentially change the case theory or their strategy.

A first complexity was then introduced by the responsive pleading filed by Johnson entitled "Answer to Second Amended Complaint." Johnson continued the thesis of shareholder/director exclusion and lockout and restated as an affirmative defense that the litigation was ultra vires. Then within the "answer," she alleged and prayed in part:

22. Complete relief cannot be accorded between the Plaintiff corporation and Defendant Johnson without the joinder of Donald K. Harger and Irene Frances Harger as directors, officer and shareholders of Plaintiff, pursuant to Rule 19 of the Wyoming Rules of Civil Procedure.

23. Donald K. Harger and Irene Frances Harger have been omitted from this lawsuit because they are the directors, officer and shareholders who initiated the lawsuit on behalf of the Plaintiff corporation against Defendant Johnson.

WHEREFORE, Defendant prays that:

1. Donald K. Harger and Irene Frances Harger be joined as third-party defendants herein, and judgment be rendered against them for all wrongs alleged against Defendant Joanna Johnson; or in the alternative;

2. That the Complaint of Plaintiffs and all causes of action herein be dismissed.

3. That Plaintiff corporation be ordered to pay all costs of suit.

4. That Plaintiff corporation be ordered to pay such further sum as the Court may deem reasonable for attorney fees for services in this action.

5. And for such other and further relief as this Court deems proper.

On the date of filing the answer, Johnson also filed a motion to dismiss the amended complaint. The argument was presented by the motion that filing by the corporation was ultra vires while the shareholders' derivative segment of the complaint was attacked for procedural noncompliance. W.S. 17–16–740; W.R.C.P. 23.1. The trial court denied that motion.

The case was scheduled for trial on the merits and the trial court followed with an order denying all pending motions by a

finding in part that issues of fact existed. Before trial, Johnson filed a trial brief which again restated her litigative status that her right to compete was validated by a breach of her interest as a shareholder/director by the exclusion and lockout.

This sequential analysis of the pleadings demonstrates that the trial commenced on the closely defined issue last outlined by Johnson's trial brief. Opening argument was not reported and the first notice that the case was faced with a metamorphosis occurred when Johnson had rested and the following colloquy ensued:

[DEFENDANT'S COUNSEL]: The defense rests, and I have a motion to amend the pleadings to conform to the evidence.

THE COURT: All right. State your motion then, please.

[DEFENDANT'S COUNSEL]: My motion is to amend the pleadings to conform to the evidence in this case. And the motion is that this action be treated as a shareholders action by JoAnna Johnson for the purpose of enjoining the corporation first of all from bringing this action; and second of all, asking that all reasonable costs be paid as a result of this action having been brought.

I further ask, Your Honor, that the pleadings be amended to ask for removal of Donald and Irene Harger as directors pursuant to Wyoming Statute 17–16–809, and I also ask, Your Honor, that this corporation be dissolved pursuant to 17–16–1430(a)(ii).

I'm also asking, Your Honor, that the personal loan and any acts which have caused indebtedness or potential liability on behalf of the corporation taken during the time that JoAnna Johnson has been locked out of the corporation be set aside, and that the parties, Irene Harger and Donald Harger, be held responsible for those actions pursuant to 17–16–304(c). And that any costs that have resulted from their actions in bringing this matter, this case against JoAnna Johnson, be deemed ultra vires pursuant to that section of the law, and that all costs that have been incurred including attorney's fees as a result of that, of their actions, be ordered to be paid back to the corporation.

THE COURT: All right. [Plaintiffs' counsel], you wish to respond?

[PLAINTIFFS' COUNSEL]: Yes, sir. Your Honor, I believe the defendant's motion is inappropriate and out of line in the sense, number one, they're asking for things that are beyond the jurisdiction of the Court and outside the scope of the pleadings such as dissolution of the corporation; that the act taken by Mr. Harger be declared ultra vires; that Don and Irene declared to be personally responsible for these and that costs of the action be awarded. Did I miss any?

THE COURT: They asked for six things.

[PLAINTIFFS' COUNSEL]: Cost of the action.

THE COURT: They addressed costs twice.

[PLAINTIFFS' COUNSEL]: Lastly, if I understood their motion, they're asking JoAnna Johnson be indemnified, I think that was part of the motion, since this was brought against her as director. And the statute, Wyoming Statute 17–16–852 which was cited does provide for indemnification of a director when they're acting as a director. And the intent of that here is that it encourages people to act as directors. For instance, I sit as a director on the * * *. For people to serve as directors of private corporations there has to be some protection for them for liability. The statute does not contemplate indemnifying directors when they are doing actions against the interests of the corporation and actions brought by the corporation such as performing a competing business.

THE COURT: Yes. I understand your position in that regard, [Plaintiffs' counsel]. I don't understand the issue of indemnification raised by their motion before the Court at this time. I understand their motion to amend the pleadings to conform to the proof, and so that's what I'm asking you to speak towards.

[PLAINTIFFS' COUNSEL]: All right. I don't mean to look lost, but I'm lost. They ask the pleadings be amended in what way? First of all, to dissolve the corporation?

THE COURT: That's correct. To state a cause of action for dissolution of the corporation.

[PLAINTIFFS' COUNSEL]: Well, Your Honor, we haven't prepared our case along those lines. We're without notice and I don't think the proof is such that that's what should be done. In fact, what has been done here has been allowed by arbitration.

I think Mr. Harger has performed in good faith and there are numerous, numerous issues that have not been brought before the Court that need to be taken care of before we can get to the dissolution.

THE COURT: All right. Well, the motion is granted. The pleadings are amended to conform to the proof, and the Court deems that there has been a case stated regarding dissolution and perhaps some of these other matters, and the Court is going to consider those in arriving at its judgment.

[DEFENDANT'S COUNSEL]: Thank you, Your Honor.

THE COURT: All right. Do you have anything in rebuttal, [Plaintiffs' counsel].

[PLAINTIFFS' COUNSEL]: Yes, sir. For clarification, did I understand what the Court's ruling was. All six things that they asked for ha[ve] been granted?

THE COURT: The pleadings are amended to request those things. I haven't granted the relief at all. I've just amended the pleadings so that they state a cause of action and request that relief, * * *. That's where we're at there.

Immediately following conclusion of the trial, the trial court issued a standstill thirty-day order leaving the decision in abeyance while the parties were given time to negotiate a buy out settlement. Lacking consummation of any settlement within the limited time, the trial court's decision came by a "Findings of Fact, Conclusions of Law, Judgment and Order Appointing Receiver" in September 1990 from which this appeal is taken. In addition to the contested paragraph twenty-five of the findings quoted earlier, the trial court adjudged and decreed:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Plaintiffs' Complaint be and it is hereby dismissed and Plaintiffs shall take nothing thereby.

2. Defendant Johnson is hereby granted judgment upon her orally amended Complaint praying for dissolution of the Corporation.

3. Notice is hereby given of the intention of the Court to appoint a Receiver to wind up and liquidate the Corporation's business and affairs. The person the Court intends to appoint as the Receiver is George L. Thompson, CPA.

4. A hearing with regard to the appointment of George L. Thompson as the Receiver in this case shall be held in the Courtroom of the Teton County Courthouse, Jackson, Wyoming on the 18th day of September, 1990 at 9:30 a.m.

5. The Court reserves the right to enter such further orders, judgments or decrees as may be appropriate in this matter until such time as the Corporation is fully dissolved.

The Hargers, individually and through the corporation, filed a notice of appeal September 26, 1990, the trial court appointed the receiver on October 4, 1990, and then on December 13, 1990, the Hargers filed a motion for hearing concerning resolution of the debts of the corporation which was set for hearing by order of the trial court. That hearing was apparently not held until this appeal can be resolved.

It is concluded from a review of the record and careful consideration of the text of the transcript that validity of the note of .$247,402.07 could have been considered to have been properly litigated and decided.[1]

---

1. The promissory note, its validity and invalidity, was the subject of trial evidence; the instru- ment itself was handed to counsel for Johnson, who then tendered it for admission into evi-

In no context, however, have debts of either shareholder due from the corporation for advances been litigated or determined in the proceedings. As a matter of fact, until defense counsel moved to dissolve the corporation at the close of Johnson's evidence, the issue of dissolution had never been presented as a subject for consideration by the trial court. It seems doubly clear that the trial court was similarly directed as to the scope of initial decision when it granted the Hargers' motion to set a hearing *on this specific subject of corporate debts to the shareholders after entry of the decision from which appeal was taken.*

I write this detailed exception to the majority's opinion to make clear that no preclusion from law of the case concept should offend the trial court's further proceedings for corporate dissolution and settlement of asset distribution based upon an adequate hearing directed specifically to provide justice to all shareholders. Repayment for advances and a division of equity are clearly issues that remain unresolved and available for further evidentiary presentation.

The issue addressed in the note validation to the contrary was totally distinct from questions of the existence of a debt from the corporation for any shareholder advanced funds. Within the closed corporation structure, the execution of a promissory note to the shareholder was properly subjected to attack to have its validity determined adversely to the executing shareholder who became the note payee. The note was put into evidence by Johnson without objection by the Hargers and was before the trial court during trial development of issues about its validity. Under admitted facts, the validity of the note was determinable as a principle of corporate law. This is what the trial court proceeded to do in its findings and decision.

The same concept regarding the case trial presentation and evidentiary status as a principle of accounting cannot be applied to any contended debt from the corporation to a shareholder. The only real connection

between the two issues was the apparent expectancy of the Hargers to prove the note and, consequently, have no further obligation to prove the debt itself. Invalidation of the note by virtue of its method of execution did not determine what advances had been made and what rights were reserved for repayment by either shareholder.

If it is to be considered that the trial court determined that the Hargers made no advances to the corporation and consequently are entitled to no reimbursement, then the decision is totally contrary to the significant amount of disconnected evidence which is a matter of record. Obviously and without question, the Hargers made advances to the corporation for business operation. This second subject of accounting, liquidation and dissolution was not directly addressed in trial evidence because dissolution was not actually considered until the motion was made and the trial court's decision was rendered in recognition of the deadlocked management and shareholder status. It is clear to me that the trial court was careful in reserving rights to a fair hearing on issues remaining in some future contested evidentiary development within which the accounting and debt obligations of the corporation to the shareholders would clearly occupy a prominent place.

I only concur with the majority on the basis that equity and debt resolution within the corporate dissolution has yet to be determined. Otherwise, any decision is improperly emplaced in a record without appropriate pleadings or any real opportunity for either litigant to address the subject by evidentiary presentation. If it is to be considered that the Hargers are foreclosed a right to prove their advances as is Johnson, then I would dissent on the basis in this case that the issue was not a pleaded controversy, was not tried and whatever evidence there is certainly demonstrates existence of *some* advances and perhaps by both shareholders. How advanced, in what amounts, and with what rights of repay-

dence which was done without objection. The document and its relation to the Hargers' con-

duct of the corporation was before the trial court.

ment are simply issues not yet tried. It is my observation that the trial court made that clear by the text of its order in limiting it strictly to the validity of the note and reserving rights for further proceedings in order to decide remaining subjects required throughout the corporate liquidation process.

It is noteworthy that this confusion was created by briefing when the Hargers stated their issue as:

II. Whether the trial court erred in finding that certain money loaned to the corporation by appellants Donald and Irene Harger is not a valid debt of the corporation?

Johnson conversely stated:

II. Whether the trial court erred in finding that an unauthorized and unratified promissory note signed by Donald K. Harger in behalf of the corporation, to himself and Irene Frances Harger, is not a valid debt of the corporation.

What we give Johnson by this decision is relief which she never claimed through written pleadings, in appellee brief or during oral argument. I agree with her concept of the stated issue and, accordingly, concur in this decision to affirm the trial court for what it actually did. However, this court should not consider on appeal questions not properly raised in the trial court. *Matter of Estate of McCue*, 776 P.2d 742 (Wyo.1989); *ABC Builders, Inc. v. Phillips*, 632 P.2d 925 (Wyo.1981); *Boley v. Sears, Roebuck and Co.*, 582 So.2d 562 (Ala.Civ.App.1991); *Pepsi–Cola Bottling Co. of Dothan, Ala., Inc. v. Colonial Sugars, a Div. of Borden, Inc.*, 423 So.2d 190 (Ala.1982). A liberal interpretative construction should not expand what the trial court neither did nor could do within the scope of the pleadings and documentary record developed thus far in the case.