**REXFORD RAND CORPORATION,**
Plaintiff–Appellee,

v.

Gregory ANCEL, Defendant–Appellant.

No. 94–2529.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1995.

Decided June 30, 1995.

George M. Hoffman (argued), Stan Mitchell Glazier, Neal, Gerber & Eisenberg, Chicago, IL, for plaintiff-appellee.

Thomas V. Malorzo, Dallas, TX (argued), for defendant-appellant.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

This diversity case requires us to consider whether a minority shareholder's duty of loyalty to a closely held corporation continues after he has been "frozen out." Rexford Rand Corporation ("Rexford Rand") is a closely held corporation registered in Illinois.[1] Gregory Ancel ("Gregory") owns 25% of the corporation's stock. Albert Ancel ("Albert"), Gregory's brother, also owns 25%, and Selwyn Ancel ("Selwyn"), Albert and Gregory's father, owns the remaining 50%. Albert serves as President, Chief Executive Officer, Treasurer, and as a director of Rexford Rand. Selwyn is the Chairman of the Board of Directors.

From the corporation's inception in 1983 until December, 1991, Gregory served as Vice President and Treasurer of Rexford Rand. He also managed a sales group for the company, and his salary from Rexford Rand was his sole source of income. On December 3, 1991, Gregory was fired from his positions as Vice President, Treasurer, and employee.[2] The reasons for Gregory's termination are in dispute. Gregory claims that he was "frozen out" by Albert and Selwyn;[3] Albert testified that Gregory was fired because of his job performance. Since he was fired, Gregory has received neither salary nor benefits. Rexford Rand has never paid a dividend to its shareholders.

In 1993, Rexford Rand neglected to file its annual report with the state of Illinois. As a result, the corporation was administratively dissolved. See 805 ILCS 5/12.35.[4] The corporation's dissolution caused the names "Rexford Rand Corporation" and "Daxcel Corporation" (another trade name used by Rexford Rand) to become available. Gregory discovered that the corporation had been dissolved, but he did not inform Albert or Selwyn. Instead, Gregory reserved the names "Rexford Rand Corporation" and "Daxcel Corporation" and secured a corporate charter in the name of "Rexford Rand Corporation." This action prevented Rexford Rand from re-incorporating under its original name. See 805 ILCS 5/12.45(b)(2). Rexford Rand brought suit claiming that Gregory breached his fiduciary duty as a shareholder in a close corporation by depriving the corporation of the use of its name. Following a bench trial, the district court ordered the return of the original name to the corporation and permanently enjoined Gregory from conducting business under the names "Rexford Rand Corporation" and "Daxcel Corporation." On appeal, Gregory argues that any fiduciary duty he owed to Rexford Rand ended when Albert and Selwyn froze him out in 1991. Because we believe that Gregory continued to owe Rexford Rand a duty of loyalty, we affirm.

As an initial matter, Gregory argues that this case is not properly in federal court because the $50,000 amount in controversy

---

1. Rexford Rand was not organized under the Illinois Close Corporation Act. Under common law principles, however, Rexford Rand qualifies as a close corporation because it is a family-run business with only three shareholders. See Galler v. Galler, 32 Ill.2d 16, 203 N.E.2d 577, 583 (1964); Hagshenas v. Gaylord, 199 Ill.App.3d 60, 145 Ill.Dec. 546, 551–52, 557 N.E.2d 316, 321–22 (1990), appeal denied, 133 Ill.2d 556, 149 Ill.Dec. 321, 561 N.E.2d 691 (1990); 1 Principles of Corporate Governance § 1.06 (ALI1994) (" 'Closely held corporation' means a corporation the equity securities ... of which are owned by a small number of persons, and for which securities no active trading market exists.").

2. Gregory resigned as a director of Rexford Rand on December 20, 1991.

3. The term "freeze-out" refers to "the use of corporate control vested in the statutory majority of shareholders or the board of directors to eliminate minority shareholders from the enterprise or reduce their voting power or claims on corporate assets to relative insignificance. A freeze-out implies a purpose to force upon the minority shareholder a change which is not incident to any other corporate business goal." Fleming v. International Pizza Supply Corp., 640 N.E.2d 1077, 1080 n. 4 (Ind.App.1994) (citation omitted).

4. A corporation that is administratively dissolved for failure to file its annual report may be reinstated within five years of dissolution. 805 ILCS 5/12.45(a).

requirement has not been satisfied. *See* 28 U.S.C. § 1332(a). The determination of the amount in controversy is a fact-specific inquiry. Thus, we review the district court's finding that the amount in controversy exceeds $50,000 for clear error. *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed.Cir.1985); *cf. Johnson v. Trigg*, 28 F.3d 639, 645 (7th Cir. 1994); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir.1989) (en banc) ("appellate courts should use deferential review for fact-intensive disputes, including the application of legal rules to facts").

■■■ Rexford Rand seeks equitable relief—the return of its corporate name—rather than damages. In an equitable action, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). The object of this suit is the name "Rexford Rand Corporation." Rexford Rand seeks a federal forum, so it bears the burden of establishing jurisdiction. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995), *cert. denied*, ―― U.S. ――, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 248 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); *cf. McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■■■ Gregory challenges Rexford Rand's assertion that the value of its corporate name exceeds $50,000. If uncontested, the courts will accept the plaintiff's good faith allegation of the amount in controversy unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *see also NLFC*, 45 F.3d at 237. Where, as here, a defendant challenges the plaintiff's allegation

of the amount in controversy, the plaintiff must support its assertion with "competent proof." *McNutt*, 298 U.S. at 189, 56 S.Ct. at 785; *NLFC*, 45 F.3d at 237. Competent proof means " 'proof to a reasonable probability that jurisdiction exists.' " *NLFC*, 45 F.3d at 237, *quoting Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993). We believe that Rexford Rand has met this burden.

Rexford Rand, a chemical manufacturing firm, has approximately 30 employees and sells "over 200 products to approximately 6,800 customers in many states." The corporation has annual sales of approximately $1.75 million and has fixed assets of $500,000. Albert testified that the name "Rexford Rand" appears on the corporation's "[b]usiness cards, product literature and labels, containers and packaging, invoices, letterheads, envelopes, advertising, novelties, [and] on the buildings themselves." In addition, Albert stated that Rexford Rand sells primarily to repeat customers and "is dependent upon service to customers who then return to buy more product or additional product." Consequently, Rexford Rand argues that name recognition is very important to its survival and the loss of the Rexford Rand name would substantially impair the value of the business.[5] For a company with $1.75 million in annual sales that depends heavily on name recognition, we conclude that at least a "reasonable probability" exists that the value of the corporate name exceeds $50,000. Thus, the district court did not commit clear error by holding that the amount in controversy requirement was satisfied.

■■■ Next, we turn to the merits. Under Illinois law, a shareholder in a close corporation owes a duty of loyalty to the corporation and to the other shareholders. *Hagshenas v. Gaylord*, 199 Ill.App.3d 60, 145 Ill.Dec. 546, 552, 557 N.E.2d 316, 323 (1990), *appeal denied*, 133 Ill.2d 556, 149 Ill.Dec. 321, 561 N.E.2d 691 (1990).[6] Shareholders

---

5. Albert testified that the value of the business would be economically impaired by "80 percent" without the "Rexford Rand" name. Rexford Rand presented no other evidence, however, that would support the accuracy of this assertion.

6. Both parties agree that Illinois substantive law applies to this case. A federal court sitting in

diversity must apply the choice of law rules of the jurisdiction in which it sits. *Wildey v. Springs*, 47 F.3d 1475, 1480 (7th Cir.1995). This suit was brought in the Federal District Court for the Northern District of Illinois. Under Illinois

must "deal with the utmost good faith, fairly, honestly, and openly with their fellow stockholders." *In re Dearborn Process Service, Inc.*, 149 B.R. 872, 880 (Bankr.N.D.Ill.1993). This duty is necessary, the *Hagshenas* court reasoned, because while a closely held corporation embodies the corporate form, it in many ways resembles a partnership. Thus, "the mere fact that a business is run as a corporation rather than a partnership does not shield the business venturers from a fiduciary duty similar to that of true partners." *Hagshenas*, 145 Ill.Dec. at 552, 557 N.E.2d at 322.[7]

■ Generally, imposing a fiduciary duty on shareholders in a close corporation shields minority shareholders from oppressive conduct by the majority. Shareholders in close corporations have often invested a "substantial percentage" of their assets in the corporation, *see Donahue v. Rodd Electrotype Co.*, 367 Mass. 578, 328 N.E.2d 505, 514 (1975), and their position in the corporation may provide them with their only source of income. Minority shareholders are vulnerable to "freeze-outs" or "squeeze-outs," where the majority, for personal rather than legitimate business reasons, deprives the minority shareholder of his office, employment, and salary. *See id.* 328 N.E.2d at 513–14; *Orchard v. Covelli*, 590 F.Supp. 1548, 1557 (W.D.Pa.1984), *aff'd*, 802 F.2d 448 (3d Cir. 1986); *Orsi v. Sunshine Art Studios, Inc.*, 874 F.Supp. 471, 475 (D.Mass.1995).[8] Moreover, because no active market exists for the corporation's stock (and prospective purchasers may be wary of buying into a small enterprise where dissension has already occurred), the minority stockholder most likely will not be able to sell his shares for any sum approaching their fair value. *Donahue*, 328 N.E.2d at 514; *Orchard*, 590 F.Supp. at 1557. Consequently, an oppressed shareholder in a close corporation may seek a judicial remedy, including dissolution of the corporation. *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill.2d 208, 170 N.E.2d 131, 138 (1960); *Hager–Freeman v. Spircoff*, 229 Ill.App.3d 262, 171 Ill.Dec. 1, 10, 593 N.E.2d 821, 830 (1992), *appeal denied*, 146 Ill.2d 627, 176 Ill.Dec. 797, 602 N.E.2d 451 (1992); 805 ILCS 5/12.50(b)(2).[9]

■ In addition, minority shareholders owe a duty of loyalty to a close corporation in certain circumstances. Minority shareholders have an obligation as *de facto* partners in the joint venture not to do damage to the corporate interests. If a minority shareholders harms the corporation through "unscrupulous and improper 'sharp dealings'" with the majority, he has breached his duty of loyalty. *Donahue*, 328 N.E.2d at 515 n. 17; *see also Helms v. Duckworth*, 249 F.2d 482, 487 (D.C.Cir.1957).[10] "Conduct by any shareholder which is intended to be detrimental to the welfare of the enterprise … is a breach of a duty of loyalty which all share-

---

choice of law rules, "[l]itigants can, by stipulation, formal or informal, agree on the substantive law to be applied to their case," as long as the stipulation is reasonable. *City of Clinton, Illinois v. Moffitt*, 812 F.2d 341, 342 (7th Cir.1987); *see also Twohy v. First National Bank of Chicago*, 758 F.2d 1185, 1189–91 (7th Cir.1985). Rexford Rand is an Illinois corporation, and Albert and Selwyn reside in Illinois. Thus, the choice of Illinois substantive law is reasonable.

7. In a partnership, the extent of the fiduciary duty owed by one partner to another varies from case to case depending on the circumstances; "a court must examine the relationship between the parties in each case so as to ascertain the standard to be applied to determine whether there has been a breach of a partner's fiduciary duty." *Saballus v. Timke*, 122 Ill.App.3d 109, 77 Ill.Dec. 451, 456, 460 N.E.2d 755, 760 (1983).

8. Close corporations often compensate their shareholders with salaries rather than dividends. Thus, loss of salary from a close corporation may be equivalent to the denial of dividends by a publicly held corporation. *Landorf v. Glottstein*, 131 Misc.2d 432, 500 N.Y.S.2d 494, 499 (1986), *aff'd*, 127 A.D.2d 1016, 511 N.Y.S.2d 776 (1987).

9. If dissolution is warranted, the court will appoint a receiver to oversee the liquidation of the corporate assets. *See* 805 ILCS 5/12.60. The proceeds will then be distributed to the shareholders after the claims of creditors have been satisfied. *Dubey v. Abam Building Corp.*, 266 Ill.App.3d 44, 203 Ill.Dec. 176, 179, 639 N.E.2d 215, 218 (1994).

10. In addition, a minority shareholder owes a fiduciary duty to the corporation when his interests are controlling on a particular issue. *Smith v. Atlantic Properties, Inc.*, 12 Mass.App. 201, 422 N.E.2d 798, 802–03 (1981) (25% shareholder owed fiduciary duty to close corporation where 80% vote required to declare dividends).

holders owe to the common venture." J.A.C. Heatherington, *The Minority's Duty of Loyalty in Close Corporations*, 1972 Duke L.J. 921, 945. Rexford Rand contends that Gregory acted unscrupulously and thus breached his duty of loyalty by reserving the Rexford Rand name for himself rather than informing Selwyn and Albert that Illinois was preparing to administratively dissolve the corporation.

■ Gregory acknowledges that, under normal circumstances, he would have owed a duty of loyalty to Rexford Rand. He argues, however, that his duty terminated after the alleged freeze-out, which deprived him of his position in the corporation as well as the benefits of his stock ownership. The Illinois courts have never decided whether a freeze-out terminates a minority shareholder's duty of loyalty to a close corporation. Generally, a shareholder's fiduciary duty continues after he resigns as an officer, director, or employee of a close corporation. *Hagshenas*, 145 Ill.Dec. at 553, 557 N.E.2d at 323 (50% shareholder who resigned as officer and director still owed fiduciary duty because he retained his voting rights, which gave him 50% control over the corporation); *In re Dearborn*, 149 B.R. at 880 ("Resignation by a shareholder from the position of officer and director does not relieve that person of a fiduciary duty to the fellow shareholders."). Neither *Hagshenas* nor *Dearborn*, however, discussed the effect of a freeze-out on a shareholder's duty.[11] Thus, we must attempt to determine how the Illinois courts would resolve this issue. *See Cincinnati Ins. Co. v. Flanders Electric Motor Service, Inc.*, 40 F.3d 146, 150 (7th Cir.1994).

Our research indicates that only one court has addressed the question of whether a freeze-out terminates a shareholder's fiduciary duty to a close corporation. In *J Bar H, Inc. v. Johnson*, 822 P.2d 849 (Wyo.1991), the Supreme Court of Wyoming stated that "where a shareholder/director/employee of a

close corporation has been wrongfully terminated from employment with the corporation and has been unjustly prevented from fulfilling her function as a director or officer, she can no longer be considered to act in a fiduciary capacity for the corporation." *Id.* at 861. The court reasoned that "the fiduciary duty not to compete depends on the ability to exercise the status which creates it." *Id.* A minority shareholder who has been frozen out no longer exercises the influence over corporate affairs that gives rise to a fiduciary duty. Consequently, no fiduciary duty should remain after a freeze-out. *Id.; cf. Tulumello v. W.J. Taylor Intl. Construction Co., Inc.*, 84 A.D.2d 903, 446 N.Y.S.2d 673 (1981) (employee of close corporation who was only a nominal officer because corporation was completely controlled by owner did not breach fiduciary duty by starting competing business).

While we understand the reluctance of the *J Bar H* court to place a fiduciary duty on a shareholder who has been frozen out, we do not believe that *J Bar H* achieves the optimal result. Gregory may have been the victim of oppressive activity, and he may have believed that reserving the Rexford Rand name for his own use would induce Albert and Selwyn to buy out his stock at a fair price. Gregory's desire to obtain a fair buyout is not itself objectionable; in fact, courts will occasionally order forced buyouts as a remedy for oppression. *See Orchard*, 590 F.Supp. at 1560.[12] The method by which he sought to induce a settlement, however, is troubling. By appropriating the corporate name, Gregory threatened to cause serious damage to the well-being of the corporation and to imperil Selwyn and Albert's investment as well as his own. The freeze-out did not deprive Gregory of his status as a shareholder, *cf. In re Dearborn*, 149 B.R. at 880, and as a shareholder in a close corporation, Gregory should have placed the interests of the corporation above his personal interests. *Hagshenas*, 145 Ill.Dec. at 553, 557 N.E.2d at 323 (a

---

**11.** In addition, the *Hagshenas* court did not have the occasion to address the duties of minority shareholders, as the case involved a 50% shareholder who retained substantial influence over corporate affairs because he could at least force a deadlock.

**12.** In addition, if an oppressed shareholder brings an action for dissolution, the parties will often settle by negotiating a buyout rather than dissolve a profitable business. Heatherington, *supra*, at 942–43.

partner may not enhance his "personal interests at the expense of the interests of the enterprise").

■ Even if Gregory was the victim of an improper "freeze-out," [13] we do not believe that the Illinois courts would grant him the right to appropriate the corporate name in an attempt to gain a favorable settlement. Illinois allows oppressed shareholders to seek a judicial remedy, and Gregory should have relied on his suit against Albert and Selwyn seeking damages or dissolution of the corporation.[14] If shareholders take it upon themselves to retaliate any time they believe they have been frozen out, disputes in close corporations will only increase. Rather, if unable to resolve matters amicably, aggrieved parties should take their claims to court and seek judicial resolution. Thus, the decision of the district court returning the name to the corporation and permanently enjoining Gregory from doing business under the names "Rexford Rand Corporation" and "Daxcel Corporation" is

AFFIRMED.

---

**13.** Given our holding today, we need not decide whether Gregory was improperly frozen out of his position with Rexford Rand. The district court did not make a factual finding on whether Gregory was frozen out, and the record is insufficient for us to make a definite conclusion concerning what happened in 1991. At oral argument, Gregory's counsel informed us that a suit is pending in the district court concerning the alleged freeze-out. We offer no opinion on the merits of that suit.

**14.** In other contexts, courts have imposed a similar requirement on parties to resolve disputes through the legal system. *See Ryan v. County of*

*DuPage,* 45 F.3d 1090, 1094 (7th Cir.1995) (protestor not justified in violating rule prohibiting the wearing of masks in courthouse when "he had orderly processes available to him for challenging the rule"); *see also Walker v. City of Birmingham,* 388 U.S. 307, 317, 87 S.Ct. 1824, 1830, 18 L.Ed.2d 1210 (1967) (proper method of challenging injunction is through judicial process, not by disobeying injunction); *People v. Huntley,* 144 Ill.App.3d 64, 98 Ill.Dec. 172, 175, 493 N.E.2d 1193, 1196 (1986) (mere fact that court order is erroneous is not a defense to contempt charge for violating the order).