The WELLNESS COMMUNITY®–
NATIONAL, Plaintiff–
Appellee,

v.

WELLNESS HOUSE f/k/a The Wellness Community® Chicago/Western Suburbs, Defendant–Appellant.

No. 95–2614.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1995.

Decided Nov. 9, 1995.

James H. Ryan (argued), Jeffrey A. Zaluda, Michael S. Friman, Horwood, Marcus & Braun, Chicago, IL, for Plaintiff–Appellee.

Patrick W. O'Brien, John E. Muench, Lillian K. Miller, Jeffrey W. Sarles (argued), Mayer, Brown & Platt, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, ROVNER, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case arose when The Wellness Community®–National (Wellness Community) and its affiliate The Wellness Community® Chicago/Western Suburbs (Wellness House) decided to part ways. Recognizing that this required it to change its name, The Wellness Community® Chicago/Western Suburbs ultimately settled on "Wellness House." Wellness Community believes that the new name might be confusing to the public, and thus that Wellness House breached the termination clause of the contract. Interesting though this question is, we do not reach it in this opinion. Because we conclude that federal jurisdiction was never established under 28 U.S.C. § 1332, and that the supplemental jurisdiction provisions of 28 U.S.C. § 1367 could not apply here, we vacate the judgment below and dismiss for lack of jurisdiction.

Both Wellness Community and Wellness House are charitable corporations in the business of providing free psychological and social support to cancer patients. Wellness Community is a California corporation, with its principal place of business in California; Wellness House is an Illinois corporation, with its principal place of business in Illinois. On July 13, 1989, the parties entered into an affiliation agreement, in which Wellness House agreed to carry out the Wellness Community program in the western Chicago area, and Wellness Community agreed to furnish various forms of assistance. Section 8 of the Agreement gave either party the right to terminate upon giving ninety days'

notice. In that event, the Agreement specified that

> [i]mmediately upon giving notice or receiving notice of revocation, Grantee shall take all steps so that the words "The Wellness Community" and all similar words which might prove confusing to the public shall be deleted from all of Grantee's activities of any and all types and kinds, and Grantee shall immediately take all steps as are necessary so that all persons will know that Grantee is no longer associated with [Wellness Community].

In August 1993, Wellness/Western Suburbs decided to disaffiliate from Wellness Community. It did so officially on November 1, 1993, when it adopted as its new name "Wellness House." Less than three weeks later, Wellness Community filed this suit in federal court.

Wellness Community's original complaint raised claims under both federal and state law, and alleged both federal question and diversity jurisdiction. Count II of the original complaint claimed violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), while Counts I and III–VI raised a variety of state law claims, both under the contract and otherwise. Wellness Community requested a permanent injunction that would require its former affiliate to eliminate the word "Wellness" from its name. Wellness House counterclaimed for declaratory relief that would confirm its right to use its new name.

After some months of preliminary skirmishing over motions for judgment on the pleadings, on April 20, 1994, the parties submitted an agreed motion to dismiss all but the breach of contract count. The next day, they filed another motion, urging the court "promptly [to] dispose of this matter," again referring only to the breach of contract issue. The district court initially denied the motion, but on June 7, 1994, it entered an order scheduling a pretrial conference, setting a trial date, and noting that plaintiff orally dismissed counts 2 through 6 of the complaint and that defendant orally withdrew its counterclaim.

On June 30, the court granted Wellness Community's motion to file an amended complaint. The amended complaint alleged only diversity jurisdiction, and it included only state law claims. Wellness House's answer, filed on July 5, denied that the amount in controversy exceeded $50,000. The answer also contested several allegations that might have indicated the amount in controversy, such as the assertion in First Amended Complaint Paragraph 15 referring to Wellness Community's planned $11,500,000 fund-raising and expansion program, and the claim in Paragraph 16 that the start-up cost for a new facility is approximately $200,000, and annual costs run $25,000 to $50,000. The answer to Paragraph 17 specifically denied the allegations that implied that Wellness House's former accomplishments were due in any significant part to its use of the name "The Wellness Community®/Western Suburbs."

Most of the four-day trial to the court dealt with the use of the term "wellness" in Wellness House's new name, and whether it was on the one hand likely to mislead the public into thinking that Wellness House was still affiliated with Wellness Community, or on the other hand whether the word "wellness" has become generic in the health care industry. At the close of Wellness Community's case, Wellness House moved for judgment, both on the merits and on the ground that the plaintiff had not proven that its claim satisfied the amount in controversy requirement of 28 U.S.C. § 1332. Although the trial court denied the motion, it did not make any findings on the jurisdictional amount question. The court again denied a similar motion at the close of all the evidence.

In its Memorandum Opinion, the district court recognized that a serious jurisdictional question existed. The court did not, however, make a clear finding on the existence of diversity jurisdiction, stating only that "we likely have diversity jurisdiction." 1995 WL 398985 *7, fn. 5 (N.D.Ill.1995). More particularly, it never resolved the issue that had been joined with respect to the amount in controversy. Instead, the court turned to the supplemental jurisdiction statute, 28 U.S.C. § 1367, concluding that supplemental jurisdiction existed and that this made resolution of the question about diversity juris-

diction unnecessary. It first noted that the claim as originally filed contained both federal and state law counts arising out of the same facts—a classic case for the exercise of supplemental jurisdiction. Relying on this court's decision in *Wright v. Associated Insurance Cos.*, 29 F.3d 1244 (7th Cir.1994), the district court then concluded that the resources it had expended in holding the trial were substantial, that the parties would now be put to additional expense if they had to retry the claim, and that it would be unfair to allow Wellness House to prevail on a jurisdictional argument that "it fully made" only after the trial.

■ Initially, we must determine which complaint governs this suit. The original complaint raised both federal law and state law issues, supporting the former as a matter of federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and the latter as a matter of diversity jurisdiction under 28 U.S.C. § 1332. Shortly before the trial, however, the court granted plaintiff's own motion to file a First Amended Complaint, which dropped all federal claims, and alleged only diversity jurisdiction. In these circumstances, it is well established that the amended pleading supersedes the original pleading. See *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir.1955); *Lubin v. Chicago Title and Trust Co.*, 260 F.2d 411, 413 (7th Cir.1958); *Fry v. UAL Corp.*, 895 F.Supp. 1018 (N.D.Ill.1995). "Once an amended pleading is interposed, the original pleading no longer performs any function in the case.... [T]he original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading." 6 C. Wright, A. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556–57, 559 (1990). Thus, our jurisdictional inquiry must proceed on the basis of the First Amended Complaint, not the original one. Although amendments that affect the court's subject matter jurisdiction are rare, for obvious reasons, they plainly can occur. For example, Fed.R.Civ.P. 19(a) implicitly recognizes that an amendment adding a person who may be required for just adjudication of the case might "deprive the court of jurisdiction over the subject matter," and 19(b) spec-

ifies how to choose between dismissing the action and allowing it to go forward in the absence of such a party.

■ Turning to the question of jurisdiction, we conclude that Wellness Community failed to establish that the amount in controversy exceeded $50,000. Ordinarily, we review a district court's determination of amount in controversy issues for clear error, see *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir.1995), but in this case the district court made no finding at all on the issue. The party seeking a federal forum has the burden of establishing jurisdiction. *Rexford Rand Corp.*, 58 F.3d at 1218; *NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 237 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). Because Wellness House contested the amount in controversy throughout the case, Wellness Community was required to "support its assertion with 'competent proof.'" *Rexford Rand Corp.*, *id.*, quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

Although monetary amounts were mentioned in the First Amended Complaint and at trial, the critical question that the district court should have resolved was the value of the object of the litigation—here, "what's in a name." It may be that the name "Wellness Community" was worth more than $50,000, but this was a question of jurisdictional fact. The record shows, and the district court found, only facts that related to various business expenditures or fund-raising activities. For example, during the years that Wellness House was affiliated with Wellness Community, Wellness House received $2,700,000 in donations. 1995 WL 398985 *2. Wellness Community, for its part, had plans for an ambitious public relations campaign and expansion program, in which it hoped to raise $11.5 million and to open fifty new facilities. *Id.* *3. The President of Wellness Community, Dr. Benjamin, testified that he was worried that Wellness House "will do something that will impugn our name...." *Id.* What is missing is any testimony about the good

will Wellness Community had established in the name itself.

We express no opinion about the way that this factual issue should have been resolved. Ideally, the district court would have made its findings of jurisdictional fact before the trial began on July 18th, bearing in mind the fact that the Answer to the First Amended Complaint, filed on July 5th, specifically stated in response to paragraph 3 that "[Wellness House] denies the amount in controversy is in excess of $50,000." This issue was again brought to the court's attention when Wellness House moved for judgment at the close of Wellness Community's case. It is enough that jurisdictional amount was contested, and that Wellness Community never showed "by competent proof" that more than $50,000 was at stake. Without such proof, the effort to sustain this case on the basis of diversity jurisdiction fails.

■ Again, the district court implicitly recognized the flaws in the proof supporting diversity jurisdiction. Rather than relying on unproven assertions about the amount in controversy, the district court turned to the supplemental jurisdiction statute for support. For two independent reasons, however, supplemental jurisdiction cannot save this judgment. The first is straightforward: once the First Amended Complaint superseded the original complaint, there was no federal claim to which these state claims could be "supplemental." No one would quarrel with the proposition that the First Amended Complaint could not have given rise to supplemental jurisdiction if it had been the first and only complaint filed in the case. The result does not differ because it was an amended complaint. (The rule in removal cases is slightly different: after a defendant removes a case from state to federal court, a plaintiff cannot defeat the federal court's jurisdiction by amending to claim an amount less than the required amount in controversy. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Any other rule would effectively defeat the defendant's statutory right to remove in diversity cases, see 28 U.S.C. § 1441(b).)

Even if the federal claims in the original complaint somehow survived the amendment process, supplemental jurisdiction under 28 U.S.C. § 1367 cannot be established in the after-the-fact manner used by the district court here. The court relied on three factors: first, "regardless of whether we should have held the trial, we now have committed substantial judicial resources" (1995 WL 398985 *4); second, if it relinquished jurisdiction after the trial, the parties would have the expense of trying the claim twice (*id.*); and third, it would be "unfair" to allow Wellness House to prevail given the procedural history of the case (*id.*).

None of these considerations saves supplemental jurisdiction here. The first, as the court itself realized, has the vice of the circular argument: it will always be tempting to bootstrap supplemental jurisdiction after a trial is over. If the federal question had been dismissed only at the end of the trial, it would be appropriate to consider the resources that were expended in the trial, but in this case the federal claim was abandoned by the plaintiff before the trial ever started. The propriety of continuing with the case should have been considered at that time. (Even from that perspective, the fact that the dismissal of the federal claim occurred on the eve of trial is not necessarily sufficient to justify (or, indeed, to defeat) supplemental jurisdiction. See *Timm v. Mead Corporation*, 32 F.3d 273, 276–77 (7th Cir.1994); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1153 (7th Cir.1990).) The court's express reliance on the fact of the trial itself makes it clear that it was not attempting to turn the clock back to mid–1994 (assuming, as we doubt, that this would be a practical possibility).

The court's concern about the expense to the parties of further proceedings is simply another dimension of the resource question. Parties are always put to some expense when they litigate in the wrong court and then suffer a jurisdictional dismissal, but this does not override the important principle that the federal courts are courts of limited jurisdiction. The third factor is similarly unpersuasive. While Wellness House may not have stressed its jurisdictional objection as strongly as it might have done, the court had a

filing before it less than two weeks before the trial began that reiterated the point, and Wellness House raised it twice during the trial. Furthermore, courts are required to notice jurisdictional faults at any time. See, e.g., *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986). There is no authority to "waive" these issues just because a party might have been hiding the ball. See generally C. Wright, A. Miller, & E. Cooper, 13 Federal Practice & Procedure § 3522 (1984).

Because neither diversity jurisdiction nor supplemental jurisdiction was satisfied here, we vacate the judgment below and remand for dismissal for want of jurisdiction.