**Paul VOGEL, et al., Plaintiffs,**

v.

**CUMMINS ENGINE COMPANY, INC., Defendant.**

**No. IP 96–0571–C M/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

July 11, 1997.

---

Michael C. Kendall, Kendall Law Office, Indianapolis, IN, for Plaintiffs.

Martin J. Klaper, Ice Miller Donadio & Ryan, Indianapolis, IN, for Defendants.

### ORDER ON MOTION TO DISMISS

McKINNEY, District Judge.

Following an increasingly common pattern, the plaintiffs in this case have sued their former employer, Cummins Engine Company, Inc. ("Cummins"), for an alleged breach of the terms of the collective bargaining agreement ("CBA") between Cummins and the Diesel Workers Union (the "Union"). The complaint, which is currently framed in three counts,[1] alleges violations of § 502 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 (Count I), § 510 of ERISA, 29 U.S.C. § 1140 (Count II), and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA" or " § 301") (Count III). The pending motion to dismiss is directed only at Count III, which Cummins urges does not state a claim for relief for two reasons. First, the plaintiffs, who are former Cummins employees and Union members, did not first attempt to resolve their grievance in accordance with the procedures outlined in the CBA, and this failure to exhaust their contractual remedies means they have not satisfied the prerequisite for suing the employer directly. Second, an action against Cummins for breach of the CBA is barred by the applicable statute of limitations for claims arising under § 301, which is six months for a hybrid claim, and two years for a straightforward action.

Plaintiffs claim that theirs is a straightforward § 301 action, which does not require any exhaustion of contractual or intraunion remedies. Although they agree that the relevant statute of limitations for such actions is two years, they disagree about whether this action was untimely filed. According to the

---

1. Count IV, alleging that the Diesel Workers' Union violated the plaintiffs' rights under the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411, 412, was voluntarily dismissed by the plaintiffs on April 16, 1997.

plaintiffs, the cause of action accrued on April 25, 1994, which means the limitations period expired on April 25, 1996. The original complaint, filed April 25, 1996, was lodged against Cummins, the Union, and the trustee of Cummins' retirement plan, Northern Trust Company. It contained two claims of ERISA violations against Cummins and Northern Trust, and one of a violation of § 301 against Cummins and the Union. Count III of the original complaint included allegations that Cummins breached the CBA and that the Union breached its duty of fair representation "by acquiescing in and facilitating" Cummins' breach.

Subsequently, the plaintiffs amended the complaint and withdrew the claim against the Union for breach of the duty of fair representation. What remained was a count labeled "Breach of Fiduciary Duty to Third–Party Beneficiary," which contained allegations that Cummins breached the CBA and the Union violated the plaintiffs' rights as third-party beneficiaries under the CBA by acquiescing in and facilitating Cummins' breach. In the third, and final, version of the complaint the plaintiffs repeat their allegation that Cummins breached the CBA by not recalling them before April 25, 1994, but have dropped any claims about the Union's role in that breach.[2] Plaintiffs are now in the position of defending against a motion to dismiss, filed April 21, 1997, by the only remaining defendant, Cummins.[3] That motion calls for the Court to determine whether a straightforward § 301 action, subject to a two-year statute of limitations, may be brought by employees against their employer without first having to establish that the union breached its duty of fair representation. For the reasons given below, the Court finds that it cannot and **GRANTS** the pending motion to dismiss.

**2.** Even though the complaint no longer contains a delineated claim against the Union, it does include an allegation that the plaintiffs have suffered loss of income and benefits "as a result of the concerted acts and omissions of Cummins and the Union." Final Amended Complt. ¶ 37. Also the plaintiffs claim to have suffered severe emotional distress as a result of the "concerted, intentional acts and omissions" of, and arising

## I. BACKGROUND

According to the Final Amended Complaint ("Complaint"), the eighty-nine named plaintiffs, and the remaining members of the class represented by the named plaintiffs, were employed by Cummins in the early to mid–1970s. Complt. ¶ 23. They were members of and represented by the defendant Union both during their employment and while they were on layoff. Complt. ¶ 25. During the period of their employment, the plaintiffs contributed to the Cummins retirement plan, the benefits of which were determined in relation to the number of years worked and the level of income of the employee at retirement. Id. ¶ 26. In 1990, the plaintiffs and class members were laid off by Cummins, but they still enjoyed recall rights under the then-current CBA. Id. ¶ 27. In April, 1993, Cummins and the Union negotiated and entered a new CBA, for the period from 1993 through 2004, but the plaintiffs did not participate in the union's ratification process for the new CBA. Id. ¶ 28. A provision of that CBA stated that all current Cummins employees who were not on layoff would be guaranteed employment throughout the life of the CBA, and the employees on layoff would enjoy recall rights until April 25, 1994. Id. ¶ 29.

At the effective date of this new CBA, all of the plaintiffs and class members were on layoff, and were thus eligible for extended recall rights to April of 1994. None of these former employees, however, were ever recalled, and on April 26, 1994, they found themselves with no further employment rights at Cummins. Complt. ¶ 31. In addition, Cummins had hired new employees rather than recall the former employees, during the period in which the latter enjoyed recall rights. Id. ¶ 32. After he was not recalled by April 25, 1994, plaintiff Paul Vogel ("Vogel") contacted Cummins to determine the effect on his pension benefits of the

from "their long-term, dependent, and fiduciary, economic and social relationship with, Cummins and the Union." Id. ¶ 38.

**3.** Plaintiffs voluntarily dismissed all claims against defendant Northern Trust Company on April 23, 1997.

loss of his employment rights. *Id.* ¶ 33. He was told that his benefits would be substantially reduced as a result of the termination of his recall rights and his employment with Cummins. *Id.* Vogel contacted many other former employees and formed a group that filed this action on April 25, 1996. Vogel and the plaintiffs claim that as a result of "concerted acts and omissions of Cummins and the Union," they have suffered a loss of benefits and income, "destruction" of the quality of their lives, loss of self-esteem, and severe emotional distress. *Id.* ¶ 38.

According to the plaintiffs, Cummins has breached the CBA between itself and the Union by failing to recall the plaintiffs on or before April 25, 1994, and instead hiring new employees to replace them. *Id.* ¶ 45. Plaintiffs claim that they "now have standing to sue on their own behalf as third party beneficiaries to the contracts." *Id.* ¶ 46. By filing this action, Vogel and the other plaintiffs seek to obtain, among other things, a preliminary and then a permanent injunction order reinstating them to the same or equivalent positions with Cummins, with the same or equivalent benefits. They also ask that Cummins pay the pension plan a sufficient sum to enable them to obtain retirement benefits equivalent to those they would have received if they had been recalled before April 25, 1994. In addition, they seek compensatory damages for all injuries, including emotional distress, pain and suffering, and an award of their costs and attorney fees.

## II. STANDARDS

### A. MOTION TO DISMISS

In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them. *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir.1994). Dismissal is appropriate only if it appears beyond doubt that the plaintiffs can prove no set of facts consistent with the allegations in the complaint that would entitle them to relief. *Hi–Lite Prods. Co. v. American Home Prods. Corp.,* 11 F.3d 1402, 1405 (7th Cir.1993). However, the Court need not ignore facts set out in the complaint that undermine the plaintiffs' claims, *Homeyer v. Stanley Tulchin Assoc.,* 91 F.3d 959, 961 (7th Cir.1996) (citing *American Nurses' Ass'n v. State of Illinois,* 783 F.2d 716, 724 (7th Cir. 1986)), nor is the Court required to accept the plaintiffs' legal conclusions. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996); *Gray v. Dane County,* 854 F.2d 179, 182 (7th Cir.1988).

This standard essentially means that if any set of facts, even hypothesized facts, could be proven consistent with the complaint, then the complaint must not be dismissed. *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996). After the Federal Rules of Civil Procedure were passed in 1938, parties no longer had to plead facts that, if true, would establish each element of a cause of action. *Id.* Instead, plaintiffs "receive the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### B. SECTION 301

The National Labor–Management Relations Act provides in § 301 for suits by and against labor organizations "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." 29 U.S.C. § 185(a). In other words, the union's job is to negotiate and enforce collective bargaining agreements ("CBA") on behalf of their members, and to fairly represent their members' interests. Unions may judicially enforce a CBA by invoking § 301 in an action against the employer. A § 301 claim brought by an individual employee against an employer is usually accompanied by a fair representation claim against the union because the two are "inextricably interdependent." *See Thomas v. United Parcel Serv., Inc.,* 890 F.2d 909, 915 (7th Cir.1989) (quoting *DelCostello v. Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983)). Proof of the union's failure to fairly represent the

**380**

plaintiffs serves as an "indispensable predicate" or "condition precedent" to an employee's § 301 suit against an employer. *Id.*

 Only when the union has failed to adequately represent an employee, that is, breached its duty, may the employee sue the employer directly. *Cleveland v. Porca Co.,* 38 F.3d 289, 295 (7th Cir.1994); *Thomas,* 890 F.2d at 915. The nature of the union's duty at any given time "is determined by considering the context in which the duty is asserted." *Thomas,* 890 F.2d at 916. That context may include the role of collective bargaining, or of enforcing the resulting CBA. When the union is enforcing a CBA, a breach of duty "occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The Seventh Circuit has cautioned that "it is not the court's role to second guess tactical decisions made by employees' duly appointed bargaining representative." *Griffin v. Air Line Pilots Ass'n Int'l.,* 32 F.3d 1079, 1083 (7th Cir.1994). Courts usually defer to union judgments, because it is important that unions be "permitted to exercise a fair degree of discretion in making the policy choices necessary to secure the good of their members." *Thomas,* 890 F.2d at 917 (citing *Hines v. Anchor Motor Frt., Inc.,* 424 U.S. 554, 563, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976)).

 When administering a CBA, the union is expected to meet a different standard of care than when negotiating an agreement in the first place. *Id.* at 918. The difference is one of degree. The union is still "accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press claims...." *Garcia v. Zenith Electronics Corp.,* 58 F.3d 1171, 1176 (7th Cir.1995). Nevertheless, it must "represent each individual fairly, with a nonperfunctory concern for his complaints and with a nonarbitrary exercise of judgment in evaluating grievances." *Id.* (citing *Schultz v. Owens–Illinois, Inc.,* 696 F.2d 505, 515 (7th Cir.1982)). Consequently, less deference is given to the decisions and judgments

of a union that is acting in its ministerial capacity. *Id.* at 919. However, to be subject to criticism for breach of its duty, the union must have made some decision, exercised some judgment, or taken some action. In the Seventh Circuit, the standard requires the employee to prove that union conduct was "intentional, invidious, and directed at the employee." *Thomas,* 890 F.2d at 922.

## III. DISCUSSION

 Employees who are members of a bargaining unit exclusively represented by a union and who believe their employer has violated their rights under a CBA, are expected and required to "give full play" to the chosen means for privately settling disputes under the CBA. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). Usually that includes a set of grievance, appeal and arbitration procedures. That requirement is consistent with an important goal of the LMRA, which is "to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes ... arising from collective bargaining agreements." *Clayton v. Automobile Workers,* 451 U.S. 679, 687, 101 S.Ct. 2088, 2094, 68 L.Ed.2d 538 (1981). To obtain judicial intervention in and resolution of the grievance, an employee must first show that the union has breached its duty of fairly representing his or her interests in the dispute. *See DelCostello v. Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983); *Hines,* 424 U.S at 566, 96 S.Ct. at 1057; *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (holding that employee cannot sidestep grievance process of a CBA and unless he follows the process, his independent suit against the employer will be dismissed). The union's duty requires it to "serve the interests of all members without hostility or discrimination toward any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Teamsters v. Terry,* 494

U.S. 558, 563, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990).

■■■■ Another way an employee may involve the courts in the grievance process is by asking a court to enforce or vacate an arbitration award. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62–63, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732 (1981). Under those circumstances the court considers whether the arbitrator exceeded the authority given by the CBA, but may not reach the merits of the dispute unless the decision was tainted by the union's breach of duty. Therefore, regardless of the means employed to garner judicial review, a determination of the merits of a grievance can only be obtained when an employee demonstrates that a breach of the union's duty has relieved him or her of the "requirement that disputes be settled through contractual grievance procedures." *Hines,* 424 U.S. at 567, 96 S.Ct. at 1058.

■■ Moreover, by characterizing a suit against the employer as one for "breach of contract" brought by a "third-party beneficiary" of the contract, the aggrieved employee does not escape this requirement. Such a characterization "ignores the significance of the fact that [the suit] was brought ... pursuant to § 301(a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law, ... but instead a demonstration that the Union breached its duty of fair representation." *Mitchell,* 451 U.S. at 62, 101 S.Ct. at 1564. Thus, the plaintiffs here may not rely on basic state contract law to resolve their dispute.

■■■ Before an employee can show that the union breached its duty, he or she must first show that the union was obligated to take some action. In the bargaining context that obligation is obvious. However, in the context of enforcing specific rights guaranteed by the CBA, as they relate to individual employees, the obligation arises when the union is notified of a problem by one of its members. It is the failure to act on behalf of a member, prolonged inaction after undertaking the process, inadequate representation, or the deliberate undermining of the grievance and arbitration process that opens the union to charges of unfair representation. *See Air Line Pilots Assoc. Internat'l v. O'Neill,* 499 U.S. 65, 75, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51 (1991). *Hines,* 424 U.S. at 572, 96 S.Ct. at 1060, *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917 (union may not arbitrarily ignore a grievance or process it in a "perfunctory fashion"), *Thomas,* 890 F.2d at 918.

The usual mechanism for involving the union in a dispute over the rights of an individual employee is for that employee to initiate the grievance procedures established in the CBA. The "grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *United Parcel Service v. Mitchell,* 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981). The grievance process gives "meaning and content" to the terms of a CBA. *Id.* That is why an employee alleging a violation of the CBA between his or her employer and union must first attempt to exhaust the exclusive contractual grievance and arbitration procedures. *See Clayton,* 451 U.S. at 687, 101 S.Ct. at 2094. Those procedures contemplate the individual employee being represented in the dispute by the appropriate union leaders.

Vogel and the other plaintiffs, as members of the Union and beneficiaries of the CBA between it and Cummins, had open to them a process for resolving their grievances delineated by three steps. *See* Exh. A to Def's Mot. to Dismiss, "Labor Agreement 1993—2004, Between Diesel Workers Union and Cummins Engine Co., Inc., Art. 8.4. The first step is to attempt to resolve the problem internally, with the Team and its Manager or Shift Coordinator. *Id.* Step 1. The employee may involve the union shop steward in this step if he or she so desires. *Id.* If that step fails to resolve the conflict, the employee and the shop steward may submit the grievance in writing to the company, after which the company must schedule a meeting and hear the grievance within a specified period of time. *Id.,* Step 2. This step must include the shop steward, any member of the Union's Bargaining Committee, and the company's business and human resources managers. *Id.* The company must give an answer in

writing within two working days of this meeting. *Id.*

If the employee is still not satisfied with the results of Steps 1 and 2, the Union may appeal the company's decision by notifying the company in writing, and another meeting will be held. *Id.*, Step 3. The grievance will be presented by the chairman of the union grievance committee, the appropriate shop stewards, and any member of the Union's Bargaining Committee, to the Plant Manager, a representative of Central Labor Relations, other area managers, and the Senior Human Resources Manager. *Id.*, Step 3. In this way, the grievance is heard by a different person at each step of the process. The company's final written answer must be provided within five working days of this Step 3 meeting. *Id.*

Within fifteen working days of the company's final answer, the Union may appeal an unsatisfactory disposition of the grievance to arbitration, by notifying the appropriate company personnel of its intention to arbitrate. *Id.*, Art. 9.1. The arbitrator must be mutually acceptable and his or her fee is shared by both the Union and Cummins. *Id.*, Art. 9.2, 9.4. The company and the Union have agreed that such arbitration will be binding on them. *Id.*, Art. 9.1. If at any step of the grievance, appeal and arbitration process the Union fails to advance the grievance in accordance with the strict time limitations, that failure will be considered an abandonment of the grievance for all purposes. *Id.*, Art. 8.5, 9.3.

▪ Having described the procedures available to Vogel and the other plaintiffs for private resolution of their dispute about Cummins' alleged breach of the CBA, the Court now turns to an examination of whether the plaintiffs' allegations state a claim for following those procedures. If not, it is necessary to determine whether the plaintiffs' allegations indicate they were excused from that requirement. For purposes of a motion to dismiss, the Court is required to assess whether any set of facts consistent with the allegations of the complaint could state a

claim for relief. Here, the necessary allegations against which to compare a set of facts entitling the plaintiffs to move forward with their suit would be allegations suggesting that the private dispute resolution process was attempted or initiated, and either "given full play," abandoned, or inadequately handled by the Union.

Upon careful review of the Complaint, the Court finds no allegation that the grievance process was ever commenced by Vogel and the other plaintiffs. Nor are there any allegations that any attempt was made to grieve Cummins' conduct toward them, or that such an attempt would have been futile. Without such allegations, the Court cannot reasonably infer or even hypothesize a set of facts consistent with the complaint to entitle the plaintiffs to the relief they seek. *See Sanjuan*, 40 F.3d at 251. In Count III, Vogel and the other plaintiffs merely state that they have standing to sue Cummins on their own behalf under § 301.[4] That bare legal conclusion, however, does not constitute a "well-pleaded fact" to which a hypothesized set of facts could be compared.

▪ In the original complaint, the plaintiffs specifically alleged that Vogel had promptly filed a grievance against Cummins through the Union. Original Complt. ¶ 25; *see also* First Amended Complt. ¶ 35. According to Vogel, the Union told him that it would not process his grievance, that it knew about Cummins hiring new employees and taking other steps to meet its labor requirements rather than recalling those on layoff, but that it was taking no action against Cummins in response. Original Complt. ¶ 26; First Amended Complt. ¶ 36. These allegations are conspicuously absent in the Final Amended Complaint, which superseded the earlier versions when it was filed. *See Wellness Community National v. Wellness House*, 70 F.3d 46, 49 (7th Cir.1995). Once an amended complaint is filed, the original complaint "no longer performs any function in the case." *Id.* Even if the original complaint could cure defects contained in the amended complaint, it cannot be so used,

---

**4.** The allegation that the concerted, intentional acts and omissions of Cummins and the Union caused the plaintiffs' injuries does not suffice as

an allegation that the CBA grievance machinery was invoked, or that the use of that machinery would have been futile.

"unless the relevant portion is specifically incorporated in the new pleading." *Id.* (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1476 at 556–57). The plaintiffs did not incorporate the earlier allegations in the Complaint.

■■■■ This omission in the Final Amended Complaint of any reference to an attempt to exhaust, or actual exhaustion of, contractual remedies is more than a mere pleading technicality. Rather, it represents an allegation that has been withdrawn. Allegations of a complaint suggest the framework for the controversy. Even though the only exclusive function of the complaint under the federal rules is to give notice, this does not mean that a plaintiff is excused from pleading the facts and circumstances that will show he or she is entitled to relief.[5] 5 Wright & Miller, § 1202 at 72. Federal pleading still requires "issue pleading, presenting a definite issue for adjudication." *Id.* Rule 8 of the federal rules requires pleadings "to indicate that if the allegations in the complaint are established, the pleader is entitled to relief. . . ." *Id.,* § 1204 (1997 Supp.). The pleadings contained in this Complaint do not raise the issue of whether the plaintiffs attempted to use the CBA's grievance procedures.

■■■■ When the plaintiff's right to sue the defendant depends on the establishment of a condition precedent, some allegation should be made that the condition was met. Fed.R.Civ.P. 9(c). The Complaint contains no factual allegation regarding whether Vogel and the other plaintiffs actually initiated the grievance process under the CBA, and the Court is not free to infer that they did. Nor is the "fact" placed in issue merely because the plaintiffs make the conclusory statement that they have standing to sue under § 301. Such a statement constitutes a legal conclusion and the Court is not required to accept the plaintiffs' legal conclusions. *Reed,* 77 F.3d at 1051. Given the importance placed by national labor policy on the private resolution of disputes, the Court is not inclined to accept the plaintiffs' legal conclusion that they have standing to sue. Alternatively, the plaintiffs did not allege any facts, circumstances or events that could lead to a finding that their duty to use the contractual grievance and arbitration procedures should be excused.

The plaintiffs argue that the Court has discretion as to whether to require exhaustion of remedies, but in support of that argument they cite a case in which the Supreme Court discussed the requirement of exhaustion of intraunion remedies. *Clayton,* 451 U.S. at 687–88, 101 S.Ct. at 2094–95. A clear distinction exists between the requirement of exhaustion of contractual grievance and arbitration procedures, which implicates the goals of national labor policy, and the exhaustion of intraunion procedures for disputes arising over internal union matters. *Id.; Kross v. Western Elec. Co., Inc.,* 701 F.2d 1238, 1245–46 (7th Cir.1983); *see also Pantoja v. Holland Motor Express, Inc.,* 965 F.2d 323, 327–28 (7th Cir.1992). At issue here is whether Vogel and the other plaintiffs properly exhausted, or were excused from exhausting, the private contractual dispute resolution mechanism found in the CBA. That type of exhaustion relates to matters in the public domain that are beyond the internal affairs of a union. *Clayton,* 451 U.S. at 688, 101 S.Ct. at 2095. In fact, in *Clayton* the parties had already stipulated to the fact that remedies under the CBA had been cut off. *Id.* at 692, n. 18, 101 S.Ct. at 2096, n. 18. That is not the case here.

Vogel and the other plaintiffs further argue that even if they are required to prove exhaustion of contractual remedies before bringing the § 301 action against Cummins, they are excused from that requirement because it would have been futile. According to the plaintiffs, if the Seventh Circuit's futility exception applies it would be inappropriate to decide the issue at this stage of the proceedings. They suggest the Court should refrain from resolving this issue until the summary judgment stage. However, no allegations were included in the Complaint that

---

**5.** The frequently-used term "notice pleading" is considered "prejudicial to a proper operation of the federal system," according to some commentators. 5 Wright & Miller, § 1202 at 72 (citing *Padovani v. Bruchhausen,* 293 F.2d 546, 550–51 (2d Cir.1961)). It was specifically rejected by the rule makers when the federal rules were adopted. *Id.*

would allow for proof of futility. "The employee must try the process, and if 'bad faith' thwarts its completion, only then may the employee file suit." *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 693 (7th Cir.1987). Instead of alleging an attempt to use the process, or that such attempt would be futile, the plaintiffs merely argue the latter in their brief. Even if that were sufficient, the arguments raised do not suffice to state a claim for futility.

■ According to the plaintiffs, any attempt to grieve the dispute through the Union would have been futile because the Union would have been forced to represent them against the new employees who were hired in the 1993 to 1994 period in which they enjoyed recall rights. If this argument were allowed to succeed, virtually all grievances would qualify for judicial review, because unions "serve as distributors of a fixed amount of resources, such as wages, pension funding, or seniority protection." *Thomas,* 890 F.2d at 917. As the Seventh Circuit has noted, in any group of moderate size and diversity, there are bound to be competing claims of entitlement and conflicting opinions about what best serves the interests of the group. *Id.* When a union is performing its function of administering the terms of a CBA, its conduct best serves the interests of the entire group when it is directed at stopping the employer from violating those terms, even if the violation benefits some union members, at the expense of others.

The plaintiffs also argue that exhaustion of their contractual remedies would have been futile because they had not been allowed to participate in the ratification vote for the new CBA. The meaning of this argument is far from clear. If it means their lack of participation renders the CBA inapplicable to them, then no § 301 action may be maintained at all. Without being beneficiaries of the CBA, they certainly cannot enforce it against Cummins. On the other hand, it is possible that the plaintiffs meant to offer this fact as evidence that the Union has already breached its duty of fair representation toward them. That breach occurred in April of 1993, when the new CBA was ratified. If that is the breach the plaintiffs claim supports their direct action against Cummins, it renders the current action untimely under the six-month or the two-year limitations periods. Either way, this argument does not take the plaintiffs where they want to go.

As the Supreme Court has stated, the "grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *Mitchell,* 451 U.S. at 63, 101 S.Ct. at 1564. No showing was made in the Complaint that the machinery was called into operation here, or if it was, that it failed to resolve the dispute. No allegations appear to suggest the machinery was allowed to operate until the plaintiffs were dissatisfied and had proof that the Union did not fairly represent them. One or the other of these outcomes must be alleged and proven to satisfy the condition precedent for a represented employee to have the right to bring a § 301 suit directly against the employer.

The plaintiffs' other arguments, that the exhaustion requirement simply does not apply because the internal appeals procedure could not give them complete relief, that they are not required to plead exhaustion, and that the burden of proof is on the party asserting the "exhaustion defense," are without merit. As noted earlier the cases cited in support of the first and third arguments both refer to exhaustion of internal union procedures, not to grievance procedures under a CBA. With respect to the second argument, the Court has already explained the necessity of alleging some facts, circumstances, occurrences or events that would support a finding of exhaustion.

■ Likewise, the argument that this action is a "straightforward breach of contract claim," analogous to "a typical state-law breach of contract action," Plfs' Brf. at 11, does not warrant further discussion, except to make one point. According to the plaintiffs, "The mere fact that the dispute involves an employer who is a party to a collective bargaining agreement does not automatically require the plaintiffs to bring a fair representation claim against their Union in order to enforce the contract." *Id.* at 7–8. That may be true, but all of the cases this Court has reviewed indicate that the plaintiff who is represented by a union, the other party to the CBA, and who is prevented from pursuing his own grievance against the employer by the terms of the CBA, must prove that

385

the union failed to adequately represent him or her before suing the employer. In addition, when the claim is for breach of the CBA, resolution of the dispute requires interpretation of the document, which means that any state law contract claim would be preempted by § 301. *See Loewen Group Internat'l, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir.1995) (noting that when resolution of a claim depends on the meaning or interpretation of a CBA, such claim is preempted under § 301).

 National labor policy, which is directed toward successful industrial self-governance and the peaceful and private resolution of labor disputes, is frustrated when employees ignore the grievance procedures in the CBA and prematurely involve the courts in their disputes. To paraphrase a statement in a recent opinion, when parties agree to a mechanism for private resolution of their disputes, such as arbitration, it must be employed in each case and receive proper deference from the courts. Otherwise, it would become "little more than a procedural detour, without ultimate significance." *See Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir.1997). By omitting any allegations that they attempted to resolve their disputes through the grievance procedures in the CBA, the plaintiffs have asked this Court to render those procedures without ultimate significance. The Court declines to do so.

One of the grounds on which Cummins based its motion to dismiss was that Vogel's and the other plaintiffs' suit was barred by the six-month limitations period for hybrid actions. This Court does not rely on that ground in granting dismissal. According to Cummins, the six month limitations period applies because the plaintiffs must still prove a breach of the Union's duty before they can sue an employer directly. However, it is not clear from the case law cited whether a suit brought by an employee under § 301 only against the employer would be subject to that limitations period. Given that the Court has relied on other grounds to determine that the Complaint fails to state a claim under § 301, that question need not be resolved here.

Alternatively, Cummins argues that even if Indiana's two-year statute of limita-tions for employment actions applies, this action was untimely because the Complaint that contains the § 301 claim at issue was filed more than two years after the claim accrued. Assuming, without deciding, that the two year statute of limitations applies, the Court finds that Cummins' argument is without merit. By including a § 301 claim in the original complaint, even though it was raised against both Cummins and the Union, the plaintiffs adequately notified Cummins of such a claim against it. Moreover, the allegations in the original complaint relating to the § 301 claim arise from the same occurrence as the ones in the final amended complaint. This fact demonstrates that the subsequent amendment reinstating a § 301 claim only against Cummins should relate back to the original filing date. For this reason, the statute of limitations defense must fail.

## IV. CONCLUSION

Cummins moved for dismissal of Count III, which is a § 301 claim by the former employees against their employer only, without including a claim against their Union. The Court has determined that the Final Amended Complaint fails to allege sufficient facts, circumstances, occurrences or events that if proven would entitle the plaintiffs to recovery under this statute. For all of the reasons given above, the motion to dismiss Count III of the complaint is **GRANTED**.